MAURICE MOORE, Respondent, v. PERRY P. WILLIAMS, Impleaded, etc., Appellant.

Where, under an executory contract for the sale of real estate, the vendee is entitled to a deed conveying and assuring to him the premises in fee simple, free of incumbrances, to justify a refusal on his part to complete the purchase and to authorize a rescission of the contract, it is not necessary for him to show that the title offered is absolutely bad. He is entitled to and may require not merely a title, valid in fact, but a marketable one, such as can again be sold or mortgaged to a reasonable purchaser or mortgagee; a reasonable doubt as to the title proffered is sufficient to authorize its rejection.

So, also, where there is a defect in the record title or an apparent incumbrance upon the premises, and the vendee, in order to defend his title, would be obliged to resort to parol evidence, he may refuse to complete his purchase, at least, except in extraordinary cases, in which it is very clear the purchaser can suffer no harm from the defect or incumbrance.

Where, therefore, the vendor acquired title under a deed from one member of a firm, and it appeared that there was at the time a judgment against the said grantor, which was an apparent lien upon the premises, held, that, in an action by the vendee to rescind the contract and recover back purchase-moneys paid and expenses incurred, it was no defense to show by oral evidence that the premises were, in fact, as between its members, the property of the firm, bought with its money and by its consent conveyed to one of its members.

Also, held, the fact that the deed to the vendors recited these facts was immaterial; as the owner of the judgment was not bound or affected by the recital.

Also, held, that, although the distinction between good and marketable titles is peculiar to courts of equity, since the union in this state of law and equity in the same courts, an action at law by the vendee to recover back purchase-money paid may be based upon the equitable ground for rejecting a title, i. e., that it is not marketable.

Murray v. Harway (56 N. Y. 337) distinguished and limited.

Romilly v. James (6 Taunt. 274); O'Reilly v. King (2 Robt. 587); Methodist Episcopal Church Home v. Thompson (20 J. & S. 321); Bayliss v. Stimson (21 id. 225) disapproved.

Reported below, 23 J. & S. 116.

(Argued June 26, 1889; decided October 8, 1889.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order, made

June 23, 1887, which affirmed a judgment in favor of plaintiffs, entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George Zabriskie* for appellant. Barnes' judgment is not a lien upon the land, and cannot be enforced against it. (*In re Howe*, 1 Paige, 125 ; *Ells* v. *Tousley*, Id. 280 ; *Gouverneur* v. *Titus*, 6 id. 347 ; *Tallman* v. *Farley*, 1 Barb. 280 ; *Trenton Banking Co.* v. *Duncan*, 86 N. Y. 221 ; *Lanning* v. *Carpenter*, 48 id. 408 ; *Kiersted* v. *Avery*, 4 Paige, 9, 15 ; *Wilkes* v. *Harper*, 2 Barb. Ch. 338 ; *Norton* v. *Mallory*, 63 N. Y. 434 ; *Brown* v. *Pierce*, 7 Wall. 205 ; *Baker* v. *Morton*, 12 id. 150 ; *Rogers* v. *Bonner*, 45 N. Y. 348 ; *Payne* v. *Wilson*, 74 id. 348 ; *Jackson* v. *Dubois*, 4 Johns. 216 ; *Jackson* v. *Chamberlain*, 8 Wend. 620 ; *Arnold* v. *Patrick*, 6 Paige, 310 ; *Wright* v. *Douglass*, 10 Barb. 97 ; *Thomas* v. *Kelsey*, 30 id. 278 ; *Buchan* v. *Sumner*, 2 Barb. Ch. 165 ; *Columb* v. *Read*, 24 N. Y. 505 ; *Siemon* v. *Schurck*, 29 id. 598 ; *Kraemer* v. *Arthurs*, 7 Barr. 165 ; *Erwin's Appeal*, 39 Penn. St. 535 ; *Page* v. *Thomas*, 43 Ohio St. 38 ; *Delmonico* v. *Guillaume*, 2 Sandf. Ch. 366 ; *Van Brunt* v. *Applegate*, 44 N. Y. 544 ; *Williams* v. *Whedon*, 109 id. 333 ; *Shanks* v. *Kline*, 104 U. S. 18.) The creditor of a partner has no greater rights in respect to the land than the partner himself has. (*Fairchild* v. *Fairchild*, 64 N. Y. 471, 477 ; *Rank* v. *Grote*, 110 id. 12 ; *Greenwood* v. *Marvin*, 111 id. 423 ; *Bissell* v. *Harrington*, 18 Hun, 81.) The Superior Court erred in holding that the trust in Guion resulted only from the payment of the consideration by another, that it was not within the exception in favor of conveyances made absolutely to the grantee without the knowledge of the person who pays the consideration, and that it was void under the statute. (1 R. S., 728, §§ 51–53 ; 2 id. 134, §§ 6, 7 ; *Foote* v. *Bryant*, 47 N. Y. 544 ; *Richards* v. *Millard*, 56 id. 574 ; *Hiscock* v. *Phelps*, 49 id. 97 ; *Reitz* v. *Reitz*, 80 id. 538 ; *Siemon* v. *Schurck*, 29 id. 610 ; *Gilbert* v. *Gilbert*, 2 Abb. Ct. App.

Dec. 256; *Lounsbury* v. *Purdy*, 18 N. Y. 515; *Schultze* v. *Mayor, etc.*, 103 id. 309; *Ryan* v. *Dox*, 34 id. 307; *Robbins* v. *Robbins*, 89 id. 251.) Although this trust is sufficiently established by parol it is, in fact, proved by writing. (2 R. S. 134, § 7; *Wright* v. *Douglass*, 7 N. Y. 564; *Cook* v. *Barr*, 44 id. 156; *McArthur* v. *Gordon*, 51 Hun, 511; *Jackson* v. *Moore*, 6 Cow. 706, 725; *Reid* v. *Fitch*, 11 Barb. 399, 407; *Day* v. *Roth*, 18 N. Y. 488; *Chapman* v. *Porter*, 69 id. 276; *Kennedy* v. *Porter*, 109 id. 527, 547.) Guion had no resulting interest, as a member of the firm, in the Fulton street property, which was subject to the lien of the Barnes judgment. (*Buchan* v. *Sumner*, 2 Barb. Ch. 165; *Columb* v. *Read*, 29 N. Y. 505; *Delmonico* v. *Guillaume*, 2 Sandf. Ch. 366; *Van Brunt* v. *Applegate*, 44 N. Y. 544; *Fairchild* v. *Fairchild*, 64 id. 471; *Menagh* v. *Whitwell*, 52 id. 146; *Tarbell* v. *West*, 86 id. 280.) The Barnes judgment is not a lien, and the defendant's title is good. (*Fagen* v. *Davison*, 2 Duer, 153; *Chase* v. *Chase*, 95 N. Y. 373; *Moser* v. *Cochran*, 107 id. 35, 40; *Shriver* v. *Shriver*, 86 id. 575; *Hellreigel* v. *Manning*, 97 id. 56; *Murray* v. *Harway*, 56 id. 337; *Phillips* v. *Shiffer*, 14 Abb. [N. S.] 101; *Ottinger* v. *Strasburger*, 33 Hun, 466; 102 N. Y. 692; *Seymour* v. *De Lancey*, Hopk. 136; *Baylis* v. *Stimson*, 110 N. Y. 621, 624; *Rice* v. *Barrett*, 102 id. 161, 162.)

*Maurice S. Cohen* for respondent. When a title is such a one as equity would not compel a purchaser to accept, a court of law will permit the purchaser to recover his deposit money and expenses. (*M. E. C. Home* v. *Thompson*, 108 N. Y. 618; *Hartly* v. *Pehall*, N. P. C. 178; *Elliott* v. *Edwards*, 3 Bos. & Pul. 181.) The defendants did not dispel the cloud that Barnes' judgment cast upon this title by the release which they obtained from trustee Brown. (*Palmer* v. *Morrison*, 104 N. Y. 132, 138.) There was no such conflict of testimony as would have warranted the trial court in having given the case to the jury. (*Appelby* v. *A. F. Ins. Co.*, 54 N. Y. 260; *Fleming* v. *Burnham*, 100 id. 1, 10.) The plaintiff had just

cause to regard Barnes' judgment as a cloud which would cause him trouble when he in his turn sold the property. (*Jeffries* v. *Jeffries*, 117 Mass. 184, 187; *Shriver* v. *Shriver*, 86 N. Y. 575, 584; *Swayne* v. *Lyon*, 67 Pa. St. 439; *Dobbs* v. *Norcross*, 24 N. J. Eq. 327.) The provisions of the statute forbid any trust being established or resulting in favor of Mrs. Williams, as executrix. (1 R. S., 728, §§ 51, 52, 53; 2 id. 135, § 6; *Sturtevant* v. *Sturtevant*, 20 N. Y. 30, 40.) The estate of Williams has not been shown to have "exhausted available legal remedies." (*O. Nat. Bk.* v. *Olcott*, 46 N. Y. 12, 18, 19, 22; *Garfield* v. *Hatmaker*, 15 id. 475, 478, 483, 484.) This is not a case of the determination of the rights *inter sese* of partners respecting assets. (*Tarbell* v. *West*, 86 N. Y. 237.) The plaintiff, as purchaser of the property, ought not to be put in the position of having a contest respecting his title. (*Jordan* v. *Poillon*, 77 N. Y. 518, 521; *Fleming* v. *Burnham*, 100 id. 1, 10; *McPherson* v. *Smith*, 49 Hun, 254; Atkinson on Market. Titles, 2, 3, 379, 632, 633; *Abbott* v. *James*, 111 N. Y. 673, 676; Rawle on Cov. [4th ed.] 42; *Delavan* v. *Duncan*, 49 N. Y. 485, 487.) The plaintiff was entitled to receive, and the defendant undertook to give a good title, and that title is not good which is incumbered. (*Cockroft* v. *N. Y. & H. R. Co.*, 69 N.Y. 201–206; Atkinson on Market. Title, 565.) Where the title of the defendants is not such as the plaintiff is bound to accept, an action to recover money paid upon a consideration that has failed can be sustained. (1 Sugd. on Vendors, chap. 10, § 3, par. 45; 2 id. [10th ed.] 202; 1 id. [11th ed.] 532; Dart. on Vend. 457; *Simmons* v. *Hazeltine*, 5 C. B. [N. S.] 544, 571; *Hartley* v. *Peakes*, N. P. C. 178.)

EARL, J. The defendants, describing themselves as trustees, on the 8th day of December, 1884, entered into a written contract with the plaintiff to sell to him a lot of land known as No. 247 Fulton street, in the city of Brooklyn, for the sum of $25,000. The plaintiff at the time of executing the contract paid upon the purchase-price the sum of $250, and he was to

pay $2,250 more upon execution and delivery to him of the deed on the 15th day of January, 1885 ; and he was to take the lot subject to a mortgage thereon for $22,500. The defendants agreed to give him a proper deed of bargain and sale for the conveyance, and assuring to him the fee simple of the lot subject to the incumbrance of the mortgage. The plaintiff subsequently refused to complete his purchase on the ground that the title tendered to him by the defendants was not clear and perfect, such as he was entitled to receive under the contract, and he commenced this action to recover the installment of $250 paid by him and $406.14, the amount paid by him to counsel for examining the title.

The title came to the defendants from William H. Guion by a deed dated August 1, 1884 which recites that the firm of Williams & Guion, in liquidation, is indebted to the estate of John S. Williams, deceased, in the sum of $105,000 and interest from August 2, 1882, and that Guion and the firm are desirous to provide for the payment thereof ; and also contains the following recital: "Whereas the said William H. Guion is seized of the lands and premises hereinafter described in his own name, but in the right of and for the use and benefit of the said firm of Williams & Guion." Then, by apt and proper words, the deed conveys the premises in question, with other real estate, to the defendants in trust to sell the same and pay the recited indebtedness out of the proceeds. Guion's title to the lot came from Anson B. Moore and George E. Apsley, who conveyed the same to him by a deed dated, acknowledged and recorded in February, 1883. While the title was thus in Guion, on the 2d day of February 1884, Demis Barnes recovered and docketed a judgment against him for $4,035.14, and that judgment became an apparent lien upon the lot.

The claim of the plaintiff is that on account of the existence of that judgment the defendants were unable to give him such a title as he had the right to demand, and that, therefore, they could not perform their contract, and that he was entitled to recover the amount of his payment and the expense of

examining the title. The defendants claim, and gave evidence tending to establish, that Guion took title to the lot for the firm of Williams & Guion, and paid for the same with firm property, and that the lot, at the time of the recovery of the judgment, although the title thereof stood in the name of Guion, was, in fact, as between him and the firm, the property of the firm; and they, therefore, contend that the judgment never became a lien on the lot, and that the title tendered to the plaintiff in performance of their contract was, in fact, perfect.

The defendants attempted to get Barnes to release the lien of his judgment upon the lot, but he refused to do so, and it still remains an apparent lien thereon. There is no record or document which precludes Barnes from enforcing his judgment against the lot. The recitals in the deed of Guion to these defendants do not bind him, and are not evidence against him, a prior incumbrancer. All the evidence to defeat his lien rests in parol and depends upon the memory of living witnesses. Whenever Barnes attempts to enforce his lien against the lot, he can be defeated only by a resort to the evidence of such witnesses who may then be dead or inaccessible. He may, at any time within ten years, issue execution upon his judgment and sell the lot, and after the lapse of many years the purchaser, at the execution sale, may bring an action of ejectment to recover the lot, and the burden would be upon the defendant in that suit to establish, by the parol evidence, the invalidity of the title of such purchaser.

We will assume that the lot, while the title stood in the name of Guion, actually belonged to the firm of Williams & Guion; that thus the defendants actually had a good title to the lot, and that the judgment was not, in fact, a lien thereon. But is a purchaser bound to take a title which he can defend only by a resort to parol evidence, which time, death or some other casualty may place beyond his reach? By the terms of the contract of sale the plaintiff was entitled to a deed conveying and assuring to him the lot in fee simple; and, by a fair construction of the language used, we think he was entitled to the lot free from any incumbrance except the mort-

gage specified. The express stipulation that he was to take the lot subject to an incumbrance specified shows that in the minds of the parties there was to be no other incumbrance upon the lot. But, aside from the language used in the contract it is familiar law that an agreement to make a good title is always implied in executory contracts for the sale of land, and that a purchaser is never bound to accept a defective title, unless he expressly stipulates to take such title, knowing its defects. His right to an indisputable title, clear of defects and incumbrances does not depend upon the agreement of the parties, but is given by the law. (Sugden on Vendors [13th ed.] 14; Rawle on Cov. 430; *Burwell* v. *Jackson*, 9 N. Y. 535; *Delavan* v. *Duncan*, 49 id. 485.) Within the meaning of this rule, at least, according to the decisions in this state, a good title means not merely a title valid, in fact, but a marketable title which can again be sold to a reasonable purchaser or mortgaged to a person of reasonable prudence as a security for the loan of money. A purchaser will not generally be compelled to take a title when there is a defect in the record title which can be cured only by a resort to parol evidence, or when there is an apparent incumbrance which can be removed or defeated only by such evidence; and, so far as there are any exceptions to this rule, they are extraordinary cases in which it is very clear that the purchaser can suffer no harm from the defect or incumbrance. In *Swayne* v. *Lyon* (67 Pa. 436) Sharswood, J., said: "It has been well and wisely settled that, under a contract for the sale of real estate, the vendee has the right not merely to have conveyed to him a good title, but an indubitable one. Only such a title is deemed marketable; for otherwise the purchaser may be buying a law suit which will be a very severe loss to him both of time and money, even if he ultimately succeeds. Hence it has been often held that a title is not marketable when it exposes the party holding it to litigation." In *Dobbs* v. *Norcross* (24 N. J. Eq. 327) it was held that "every purchaser of land has a right to demand a title which shall put him in all reasonable security and which shall protect him from anxiety,

lest annoying, if not successful, suits be. brought against him and probably take from him the land upon which money was invested. He should have a title which should enable him, not only to hold his land, but to hold it in peace, and if he wishes to sell it, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value."

If the plaintiff had been a purchaser at a judicial sale, and this had been a proceeding against him to compel him to take the title, or a proceeding by him to be relieved from his purchase and to have his deposit refunded, it cannot be doubted that the title would have been held so defective or doubtful that the court would have granted him relief. (*Jordan* v. *Poillon*, 77 N. Y. 518; *Fleming* v. *Burnham*, 100 id. 1; *Ferry* v. *Sampson*, 112 id. 415.) If the vendors here had brought an action against the vendee to compel specific performance of this contract, it is equally clear that they would have failed in the action. The court would not compel the vendee to take the title with the cloud of this incumbrance resting thereon. (*Marlow* v. *Smith*, 2 P. Wms. 201; *Sloper* v. *Fish*, 2 Ves. & Bea. 149; *Shapland* v. *Smith*, 1 Brown's Ch. 67; *Jeffries* v. *Jeffries*, 117 Mass. 184; *Seymour* v. *De Lancey*, Hopkins' Ch. 436; *Hinckley* v. *Smith*, 51 N. Y. 21; *Freetly* v. *Barnhart*, 51 Pa. 279; 3 Pom. Eq. Jur. § 1405.)

But this is an action at law, and it has sometimes been held that the distinction between good and marketable titles is peculiar to courts of equity; that it is unknown in courts of law, and that there the question is simply, is the title good or bad? The earliest case which has come to our attention, holding such a doctrine, is *Romilly* v. *James* (6 Taunt. 274), decided in 1815. That was an action to recover back the deposit paid on a contract for the purchase of lands upon the alleged insufficiency of the title tendered, and there GIBBS, Ch. J., said: "It is said that the plaintiff will have made out the claim to recover back his deposit if a cloud is cast on the title. That is not so in a court of law; he must stand by

the judgment of the court as they find the title to be, whether good or bad; and if it be good in the judgment of a court of law, he cannot recover back his deposit. If he had gone into a court of equity it might have been otherwise. I know a court of equity often says this is a title which, though we think it available, is not one which we will compel an unwilling purchaser to take; but the distinction is not known in a court of law." In that case, however, there was no question of fact depending upon parol evidence. The sole question was one of law whether a devisee took a defeasible fee simple with an executory devise over, or an estate tail, and the court held that he took an estate tail, and that, therefore, the vendor could, as matter-of-law, make a good title. The vendor clearly had such a title as a court of equity would compel a purchaser to take. In Sugden on Vendors (13th ed. 332), it is said: "A court of law can, of course, decide upon the validity of a title, however ambiguous or doubtful the construction may appear to be. Whether courts of law were at liberty to follow in the footsteps of equity and to hold .that a title may be too doubtful to be forced on a purchaser; is a question upon which eminent judges'have differed with each other, and even with themselves. But it appears to be ultimately settled that courts of law cannot adopt the equitable rule, and are bound to decide the legal question upon which the right to recover must depend." The learned author here evidently had in mind titles depending upon disputed questions of law, which a court of law could certainly and finally solve, but not titles depending upon questions of fact to be solved by the parol evidence of witnesses, and which, in the absence of the parties to be bound, could never be said to be finally settled; and he cites as authority that a purchaser will be entitled to a marketable title at law (*Hartley* v. *Pehall*, 1 Peake's N. P. 131; *Wilde* v. *Fort*, 4 Taunt. 334; *Curling* v. *Shuttleworth*, 6 Bing. 121), and as authority that he is entitled at law to only a good title, although not marketable. (*Boyman* v. *Gutch*, 7 Bing. 379; *Oxenden* v. *Skinner*, 4 Gwil. 1513; *Maberley* v. *Robins*, 5 Taunt. 625; *Romilly* v. *James*, 6 id. 274.)

In *Jeakes* v. *White* (6 Ex. 873), decided in 1851, the action was brought to recover the expenses incurred by the plaintiffs in investigating the defendant's title to mortgage certain lands, and the plaintiffs recovered. POLLOCK, C. B., writing the opinion of the court, said: "The question really is whether this was such a title as a vendee · has a right to expect, and which would justify him in concluding the purchase. We think that when a question arises between parties who are about to enter into the relationship of vendor and vendee, as to the meaning of a good or sufficient title, there must be such a title as the court of chancery would adopt as a sufficient ground for compelling specific performance." In *Simmons* v. *Haseltine* (5 C. B. [N. S.], 555), decided in 1858, after the thirteenth edition of Sugden on Vendors was published, it was held that when the ability of the vendor to make a good title to a purchaser of the premises sold depends upon a doubtful question of fact or of law, the title will not be deemed a good or sufficient title as between vendor and vendee. There A bought certain premises, the description of which in the particulars included a stall which ·was claimed by the purchaser of the adjoining house under the same vendor, and it was doubtful, as a matter of fact, whether the description had been corrected at the time of the sale to A., so as to include the stall, and, as a matter of law, whether the stall was included in the conveyance to the purchaser of the adjoining premises, and a court of equity had refused to decree specific performance against A.; and it was held that A. was entitled to receive back his deposit and interest, and the expenses of investigating the title, in an action at law against the vendor. So we do not perceive how it can be said that the law has been finally settled in England according to the text of Sugden.

In this state, in *O'Reilly* v. *King* (2 Robt. 587), *Methodist Episcopal Church Home* v. *Thompson* (20 J. & S. 321), *Bayliss* v. *Stimson* (21 id. 225), the New York Superior Court held that in an action by a vendee of real estate against the vendor, to recover back a deposit made on

account of the purchase-price, it was not sufficient for him to show that the title tendered was doubtful, but that he was bound to show that it was, in fact, bad, and that the doctrine of equity courts, as to marketable titles, had no application. The latter case was affirmed in this court, not upon the law,. however, as announced in the court below, but upon the ground that the objections to the title were baseless. There is also some countenance for the doctrine of the Superior Court cases cited in the opinion of Folger, J., in *Murray* v. *Harway* (56 N. Y. 337). There, however, the learned judge was of opinion that upon the facts a court of equity would have adjudged specific performance against the vendee, and it is clear that whenever such is the case the vendee cannot, in a court of law, rescind the contract' and recover back a payment of purchase-money. It has been settled in Pennsylvania that a vendee can defeat an action at law brought by the vendor for an installment of purchase-money, under an executory contract for the sale of lands by showing, not that. the title tendered is actually bad, but that it is doubtful and unmarketable. (*Colwell* v. *Hamilton*, 10 Watts. 413; *Ludwick* v. *Huntzinger*, 5 Watts. & S. 51; *Swayne* v. *Lyon*, 67 Penn. 436.) In *Allen* v. *Atkinson* (21 Mich. 351), an action at law, Cooley, J., said: "The vendee had an undoubted right to a good title, and to a deed with proper covenants; and he had a right, also, to insist that the title should be a marketable one, not open to reasonable objection."

The case of *Methodist Episcopal Church Home* v. *Thompson* (*supra*), came to this court and the judgment was here affirmed upon the facts. (108 N. Y. 618.) But the doctrine of the Superior Court cases above cited, as well as that of *Romilly* v. *James* (*supra*), was distinctly repudiated. Peckham, J., writing the opinion here, said: "We disagree with the court at General Term upon the necessity, in such a case as this, of showing that the title is absolutely bad. We think that if there was a reasonable doubt as to the vendor's title, such as to affect the value of the property and to interfere with the sale of the land to a reasonable purchaser, the plaint-

iff's cause of action would be sustained.". While what was thus said was not necessary to the decision of that case, it is more than a mere *dictum*. The opinion concurred in by the entire court was written to set right what was deemed an erroneous view of the law taken in the court below, and which might otherwise have been supposed, from the opinion or the judgment, to have received the approval of this court.

It has sometimes been said that the reason why a court of equity will not compel an unwilling vendee of real estate to take a title which, although good, is not marketable, is that such a court is not competent to decide, or is, at least, unwilling to decide, doubtful questions of law and fact in such cases, at the hazard of what might afterwards be determined in a court of law. (Rawle on Covenants, 433, note.) Courts of law, with jurors as triers of the issues of fact, were deemed more competent than courts of equity to solve the doubts. But whatever foundation the reason may once have had, it has none now in this state since the union of law and equity in the same courts, and since equitable defenses can be set up in legal actions. Courts in equitable actions are just as competent here to deal with both the law and the facts of a case as they are in legal actions. If the conscience of a judge in an equitable action needs information, he can obtain the findings of a jury by submitting the issues of fact to them.

So, now, there is no longer any reason whatever for the distinction which some judges have made as to marketable titles in courts of law and equity. If a vendor cannot, by an action for specific performance, compel a vendee to take a conveyance of land because the title is doubtful and unmarketable, why should he be permitted to compel him, in an action at law, to pay for the land, both actions being triable in the same tribunal? Why should a purchaser be compelled to pay for a title which he is not bound to take? If a vendee, who has paid part of the purchase-money, sues to recover it back because the title tendered to him is unmarketable, the vendor, in the same action, can set up as an equitable defense or counter-claim a cause of action for the specific performance

of the contract (*Morse* v. *Cochrane*, 107 N. Y. 35); and it would be quite an absurd administration of the law if the same court, at the same time and upon the same evidence, should deny the defendant specific performance, on the ground that his title was doubtful and unmarketable, and yet permit him to retain the purchase-money because his title was, in fact, good, although doubtful and unmarketable.

Dealings in real estate generally involve large pecuniary values, and large amounts are frequently invested in buildings and other improvements. The law is such that an adverse claim need not be asserted for many years until after time has closed the mouths of living witnesses and destroyed ancient muniments of title. For many purposes a doubtful title is a worthless title. Hence it is generally the expectation of vendees entering into executory contracts for the purchase of land that they will receive a good title not only, but one free from reasonable doubt and damaging infirmity; and such a title it must be assumed that every fair, honest vendor expects to give unless he is freed from the obligation by some express stipulation in the contract; and this understanding should be respected and enforced by both courts of law and equity. As said by SELDEN, J., in *Burwell* v. *Jackson* (9 N. Y. 535): "Executory agreements for the purchase of lands are frequently made under circumstances which afford neither time nor opportunity for a thorough examination, and the purchaser cannot be assumed, prior to entering into such agreement, to have investigated the title." He pays his money in reliance upon the understanding that he is to have a title both good and marketable, and if the vendor does not tender him such a title there is absolutely no reason why he should not receive back the money paid, and he should not be compelled to take an unmarketable title at the peril of losing what he has paid. Take the case where a vendee has made an executory contract of sale, paid the entire purchase-price, and the vendor, at the time of performance by him, tenders a title which, by the record, appears to be in another, and yet, where he can show by parol evidence a lost deed or will vesting him

with the title, shall the vendee be compelled to lose the money paid, or take an infirm and, for many purposes, a worthless title? It is true that even courts of equity have, in some cases, compelled purchasers to take titles resting upon adverse possession. But in such cases the adverse possession was established beyond any reasonable doubt. It is a fact usually open and notorious and generally known to many witnesses. Such a title is strengthened by every passing hour. Such cases bear little analogy to one like this, where the lapse of time operates in a different way, and may speedily wipe out the only evidence competent to cure or remove the defect in the title tendered.

Here, Barnes insists upon his lien and refuses to cancel it. The vendors should be at the expense of clearing the title of this cloud, and it is not just that they should cast that burden upon the vendee, and require him to take an unmarketable title.

We, therefore, conclude that the judgment below is right and should be affirmed, with costs.

All concur, except GRAY, J., not voting.

Judgment affirmed.