WILLIAM R. LOWE, Plaintiff, *v.* PETER B. STANTON, Defendant.

First Department, March 5, 1920.

Deeds — restrictive covenants in deed and contract of sale construed — vendor and purchaser — marketable title — land subject to restrictive covenants.

On the submission of a controversy upon an agreed statement of facts in which the point presented for decision was whether the title of the defendant to certain premises which by a contract in writing he agreed to convey to the plaintiff's assignor was such that he could convey the fee simple of the premises free of all incumbrances, it appeared that the premises in question were known as lot 16 in a block of land containing twenty-one lots; that a predecessor in title of the defendant entered into a contract to purchase the entire block which contract contained restrictive covenants, not limited in time, as to the character and size of the buildings to be erected on the lots and the cost thereof, and also a covenant concerning the opening and grading of the street; that the deed for said block, with the exception of lots 4 and 5, was executed and delivered on the same day as the agreement and both were recorded on the same day but it did not appear that they were executed simultaneously; that said deed contained restrictive covenants of a different character which were limited to run for ten years and had expired before the contract herein was executed; that the deed to the defendant of lot 16 was subject to the restrictions and covenants contained in the prior deeds and in the said agreement; and that since the execution of said agreement the character of the neighborhood had materially changed.

*Held,* on the facts submitted that it cannot be said that the agreement was void and unenforcible;

That the agreement and the deed of the block are open to the construction that the restrictions in the deed were intended to supplement those in the agreement, and that the restrictions in both instruments were intended to be operative;

That the change in the character of the neighborhood did not invalidate the restrictive covenants and operate to remove the incumbrance imposed thereby, but the only effect was to preclude a suit for equitable relief for the enforcement thereof;

That the facts are insufficient to show that the restrictions contained in the said agreement have ceased to be operative and the question of law arising on the facts is not so free from doubt that it may be held that the defendant has a good and marketable title and his title is not such, therefore, that he can convey " the fee simple, of the said premises, free of all encumbrances."

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

*J. Brewster Roe* of counsel [*Dulon & Roe,* attorneys], for the plaintiff.

*John H. Rogan* of counsel, for the defendant.

LAUGHLIN, J.:

The point presented for decision is whether the title of the defendant to certain premises in Bronx county, described in the submission, which by a contract in writing, made on the 2d day of May, 1919, he agreed to convey to one McQuilan, who assigned his rights under the contract to the plaintiff, was such that he could convey to the purchaser the fee simple of the premises free of all incumbrances. The purchaser refused to accept the title on the ground that the use of the premises was restricted by deeds in the chain of the record title and by an agreement of record annexed to the submission as Exhibit "A," dated March 1, 1909. The premises in question are known as lot 16, in a block of land consisting of twenty-one lots, bounded northerly by One Hundred and Ninety-first street, easterly by Creston avenue, southerly by One Hundred and Ninetieth street; and westerly by Morris avenue. The agreement was made between the John B. Haskin Estates, Inc., party of the first part, which then owned the entire block of land, and the LeRoy Construction Company, party of the second part. It is recited in the agreement that on the 1st day of February, 1909, the predecessor in interest of the party of the first part contracted in writing with one Burke to sell and convey said block of land to him, including the bed of One Hundred and Ninety-first street, and he agreed to improve the street, and that said contract also provided for the execution of an agreement to cover the character of the buildings to be

erected on the premises so to be sold and conveyed and that the party of the second part had succeeded to Burke's rights and interest under said former contract. In consideration of the agreement of the party of the first part to sell and convey to it the premises embracing the entire block and including the bed of One Hundred and Ninety-first street for $90,000, which it was agreed was less than the premises were worth, " but was so done because of the agreement to be made by the purchaser " as thereinafter set forth, the party of the second part agreed as follows:

" *First.* The party of the second part hereby covenants and agrees that neither it nor its successors or assigns shall or will erect or cause, suffer or permit to be erected upon the said premises or any portion thereof except lots 4 and 18 on the following diagram, any buildings or edifices other than private residence dwellings, each of which said residence dwellings, except as hereinafter provided shall occupy a plot of land not less than 34 feet in width by 100 feet in depth, and which dwellings shall not be less than 20 or more than 24 feet wide, and not less than 40 nor more than 50 feet in depth on any such plot or which shall cost less than $7,000 to erect. Inasmuch as there is now a building on the plots on the northerly side of 190th street, commencing 35 feet east of Morris avenue and extending easterly 68.63 feet covering the larger part of lot 17 and the westerly part of lot 18 on the diagram hereinafter shown, it is agreed that there be erected a building on the easterly 28 feet of said plot 18 of the same character and costs as shall of [*sic*] the other buildings hereinafter provided for. There may be erected on the southerly 31 feet of said lot Number 4 a building to comply in all other respects with the covenants and restrictions above referred to.

" *Second.* The party of the second part further covenants and agrees that it will forthwith after the execution and delivery hereof commence with [*sic*] the construction of three residence dwellings, in accordance with the covenants contained in the deed of said premises, and upon plans as to design and construction and as to style and character to be first approved by the party of the first part hereto, one of said buildings to be erected on each of the lots 19, 20 and 21 " of the premises to be conveyed.

The party of the second part also agreed within sixty days to regulate, lay out and grade One Hundred and Ninety-first street, with a sidewalk on the southerly side not less than ten feet in width, and a driveway not less than thirty feet in width, and properly curb and gutter the street and install and build therein a proper sewer at its own cost and expense, and then convey the street to the city for a nominal consideration. The party of the second part further agreed, if proceedings should be instituted for opening One Hundred and Ninety-first street, or for improving it opposite the block, that all assessments therefor should be imposed on the premises conveyed, and that if an award should be made for the bed of the street in excess of the amount of the assessment it would assign and transfer the excess of the award to the party of the first part. A deed of the block, *with the exception of lots 4 and 5,* bearing the same date as the agreement, was executed by the party of the first part to the party of the second part. The deed and agreement were proved or acknowledged on the 5th day of April, 1909, and both were duly recorded on the 6th day of April, 1909. The deed contained a restrictive covenant as follows:

" And the party of the second part hereby covenants and agrees that for the period of [*sic*] term of ten years from the first day of March, 1909, it shall not nor shall its successors or assigns erect or cause, suffer or permit to be erected upon said premises or any portion thereof, any buildings or edifices other than private residence dwellings each of which shall be detached from the others. And further that neither the party of the second part, its successors or assigns shall erect or cause, suffer or permit to be erected upon said premises at any time any slaughter house, blacksmith shop, forge, foundry, furnace, factory of any kind or nature whatsoever, tannery or other factory for the manufacture, preparation or treatment of skins, hides or leather, or any brewery, warehouse, distillery, or any building, booths or other structures to be used as a livery stable or for carrying on any noxious, dangerous or offensive trade or business."

The body of Exhibit " A " is set forth in the submission, but not the signatures or acknowledgments. At the end of it appears, what is probably the indorsement thereon, a recital that it was received at the Register's office at eleven-forty A. M. The submission only contains an abstract of the deed to the

LeRoy Construction Company annexed thereto, and a recital of what probably is an indorsement thereon indicating that it was received at the register's office at ten-two A. M., but in the stipulated facts it is stated that " immediately following the record of said agreement said premises were duly conveyed by John B. Haskin Estates, Incorporated, to said LeRoy Construction Company," but that the conveyance did not embrace lots 4 and 5 in said block, and that on those lots " stand a private detached dwelling house and garage."

The submission shows that there has been erected on lots 1, 2 and 3 a private dwelling house and garage, and likewise on lots 6, 7 and 8, and on each of the lots 19, 20 and 21 there has been erected a detached dwelling house. The remainder of the block remains unimproved. The party of the first part to the agreement, which retained title to lots 4 and 5, although they were to be conveyed under the agreement, conveyed them on April 10, 1909, with a restriction that for a period of ten years from the date of the deed no building should be erected thereon excepting detached private dwelling houses, and a general covenant against nuisances. The party of the second part to the agreement, namely, the LeRoy Construction Company, conveyed lots 1, 2 and 3, February 15, 1910, and its grantee covenanted as follows:

" And the said party of the second part (Kiel) covenants for himself, his heirs and assigns, that neither the said party of the second part, nor his heirs or assigns, shall or will, for a period of ten years after the first day of March, 1909, erect or cause, suffer or permit to be erected on said premises, or any portion thereof, any buildings or edifices, other than private residence dwellings, each of which shall be detached from the others, and each of said residence dwellings shall occupy a plot of ground not less than thirty-four feet in width by one hundred feet in depth, and which dwellings shall not be less than twenty nor more than twenty-four feet wide, and not less than forty nor more than fifty feet deep, to cost not less than seven thousand dollars. The party of the second part shall have the right to construct and maintain at the extreme rear of said buildings respectively, a one story private automobile garage of fire-proof construction, or a private stable, which shall be so built to keep the rate of insurance on the adjacent buildings

as low as possible. It is further covenanted and agreed by the party of the second part that neither he, nor his heirs or assigns, shall erect, or cause, suffer or permit to be erected upon said premises at any time, any slaughter house, blacksmith shop, forge, foundry, furnace, factory of any kind whatsoever, tannery for hides or leather, or any brewery, warehouse, distillery, or any building, booth or other structure to be used as a livery stable or for the carrying on of any noxious, dangerous or offensive trade or business."

It also conveyed lots 6 to 13 to the same grantee on February 7, 1910, with like covenants on his part. On September 26, 1910, it conveyed lots 14 and 15 subject only to incumbrances thereon. It conveyed lot 16, the premises in question, to Rose M. Stanton, April 12, 1910, " subject to restrictions and covenants contained in prior deeds of record, and in the agreement between the LeRoy Construction Company and John B. Haskin Estates, Incorporated, Exhibit 'A.' " It conveyed lots 17 and 18, March 31, 1909, subject to the covenants contained in the deed to itself, and in Exhibit " A," and it conveyed lot 19, October 5, 1909, subject to the restrictions contained in the prior deeds of record and in Exhibit " A." It conveyed lot 20, February 25, 1910, subject to the covenants and restrictions then of record. It conveyed lot 21, January 17, 1910, subject " to restrictions contained in prior deeds of record, if still in force and effect," and in the agreement Exhibit "A."

The restrictions contained in the deed from the party of the first part to the agreement, Exhibit " A," to the party of the second part thereto were limited to ten years and, therefore, they expired on the 1st day of March, 1919. The plaintiff, however, contends that the restrictions contained in Exhibit " A " still remain in full force and effect and the defendant contends they were only intended to continue for the same period as the restrictions in the deed, and, on other stipulated facts, he also claims that the character of the neighborhood has so materially changed from that of private residences to a business and apartment house section that the restrictions, if they still continue, are no longer *enforcible.* The submission does not state the facts or circumstances under which the terms of agreement, Exhibit " A," were departed from by the party of

the first part reserving therefrom title in itself to lots 4 and 5. Although the agreement and deed are dated the same day and are acknowledged on the same day it is not stated that they were executed simultaneously, and while inferences of fact are not to be made on a submission we must decide whether the facts stipulated show such a title as the defendant agreed to convey. If, therefore, the facts stipulated, without extension by any inference, do not show such a title, judgment must go in favor of the plaintiff for the down payment because the defendant stands on this submission as sufficiently showing title in him and ability to convey according to the contract. On the facts submitted we cannot say that the agreement, Exhibit " A," was void and unenforcible. It indicates that the party of the first part thereto owned other land in the vicinity, presumably to the north of One Hundred and Ninety-first street, for otherwise it would not be interested in requiring the party of the second part to improve and deed the street to the city or in requiring the party of the second part to bear any assessment for opening the street. Exhibit " A " may not have been executed simultaneously with the execution of the deed and very likely it was not, for if so lots 4 and 5, which were not conveyed thereunder, would likely have been excluded therefrom. If it had been intended that the deed embraced the only restrictions there is no explanation for the execution and recording of Exhibit " A " or of the execution by the party of the second part of several conveyances subject not only to the restrictions in the deed but also to the restrictions in Exhibit " A." It may be that after the execution of Exhibit " A " an agreement was made between the parties by which the party of the first part was released from conveying lots 4 and 5 on which, according to the stipulation, a dwelling had already been erected, and that it was then agreed that the restrictions with respect to the erection of no buildings other than dwellings on the other lots should be limited to ten years, but this is an inference which we may not draw on a submission. The agreement and deed are, I think, open to a construction that the restrictions in the deed were intended to *supplement* those in the agreement. It will be observed that the agreement does not require that the residence dwelling should be *detached,*

and under it two dwellings might have been built on the line of two lots or with a party wall, whereas, under the deed for the period of ten years, the grantee was restricted to building *detached* buildings, and that, it may well be argued, was the particular reason for incorporating the restrictions in the deed as a *further* restriction. It is not necessary to express a definite opinion on this point. It is sufficient that there is reasonable ground for doubt with respect to it. It is quite evident, I think, that it was intended that the restrictions in the agreement as well as the restrictions in the deed should be operative, for the restrictions in the deed contain no provision with respect to the dimensions of the dwellings, or the cost thereof or the size of the plots on which they were to be erected, whereas those were all provided for in the agreement. The change in the character of the neighborhood does not *invalidate* the restrictive covenants. The only effect thereof is to preclude a suit for equitable relief for the enforcement thereof. The facts are insufficient, I think, to show that the restrictions contained in Exhibit " A " have ceased to be operative, and if the facts presented are the only material facts the question of law arising thereon is not so free from doubt that it may be held that the defendant has a good and marketable title, and that the plaintiff would not, in taking title incur serious risk of litigation at the instance of others who are not parties to the submission and who would not be bound by the decision made herein, and, therefore, under the well-settled rule, the plaintiff should not be required to take title. (*Moore* v. *Williams,* 115 N. Y. 586, 592; *Vought* v. *Williams,* 120 id. 253, 257; *Irving* v. *Campbell,* 121 id. 353, 358; *Anderson* v. *Steinway & Sons,* 178 App. Div. 507; affd., 221 N. Y. 639.)

It follows that the plaintiff should have judgment releasing him from liability under the contract on the ground that the defendant's title is not such that he can convey " the fee simple, of the said premises, free of all encumbrances," or a marketable title, and for the return of moneys paid to apply on the purchase price.

CLARKE, P. J., SMITH, PAGE and MERRELL, JJ., concur.

Judgment directed for plaintiff as stated in opinion. Settle order on notice.