**WRENCH v. UNIVERSAL PICTURES CO., Inc. et al.**

United States District Court
S. D. New York.

Jan. 18, 1952.

Paul, Weiss, Rifkin, Wharton & Garrison, New York City (Samuel J. Silverman and Richard H. Paul, New York City, of counsel), for plaintiff.

Adolph Schimel, New York City (Charles S. Rosenschein and Murray H. Warschauer, New York City, of counsel), for defendant Universal.

Stern & Reubens, New York City (Dodd, Mead, Arthur E. Farmer, New York City, of counsel), for defendant.

RYAN, Judge.

Plaintiff and both defendants have moved separately for summary judgment contending that as to their respective right to such relief there are no factual issues requiring trial. Rule 56, Fed.R.Civ.P., 28 U.S.C.

The claims asserted by plaintiff are for moneys she alleges are due her from defendant, Universal, under a written contract made on April 22, 1948.

By this contract plaintiff sold to Universal all motion picture rights for the entire world to three stories written by her (two of which had been published), and contracted to sell the rights to such additional story or stories and all adaptations and revisions which she might write and publish based upon the theme and idea of plaintiff's experiences as a lecturer. All of these stories were to be known and entitled collectively as It Gives Me Great Pleasure; and all were referred to in the contract as the "property." Universal was also given the right to use the title of the property or of any story as the title of any motion picture production based on the same theme. In the contract plaintiff agreed that she would protect and preserve the copyright on the property sold and to be sold from coming into the public domain so far as might be legally possible, by affixing to each "copy or arrangement of said work or any part thereof published or offered for sale any notice necessary for copyright protection in the United States or necessary for like protection under the laws of other countries." Plaintiff undertook that as each story was published with proper copyright notice she would duly register the same "wheresoever its protection so requires." She also agreed to procure the execution and delivery of an instrument by any publisher to Universal assigning all rights sold to Universal, and contracted to specifically reserve Universal's rights in the conveyance and transfer or any rights in the property to another.

Upon execution of the contract it was further provided that plaintiff was to receive from Universal a down payment of $10,000., a further payment of $25,000. upon commencement of principal photography of the first photoplay, if any, based on the property sold or within one year from the contract date. Universal also agreed to pay plaintiff $.25 for each copy of the regular trade edition of a full-length compilation of the stories published in book form and sold in the United States and Canada within 18 months of the first publication, these payments, however, not to exceed the sum of $25,000.

The complaint admits receipt by plaintiff of the first payment of $10,000. and alleges as a breach of the contract Universal's failure to pay the balance allegedly due amounting to $50,000. Plaintiff asks judgment in that amount against Universal.

Universal by answer admits the making of the contract in suit, but denies any breach on its part. It affirmatively alleges that plaintiff did not duly perform in that she neglected and omitted, (1) to preserve the copyright on the property in the United States and throughout the world, (2) to specifically preserve and protect the rights of Universal when assigning rights in the property to others, (3) to procure the execution and delivery of assignments by publishers to Universal, and (4) to give Universal the legal and exclusive right to use the title to said property. Universal alleges that by reason of this failure of plaintiff to duly perform, the property became "unmarketable" and that title thereto was rendered "unmarketable, defective, clouded and doubtful."

As separate defenses Universal pleads its election to rescind the contract and alleges readiness to restore to plaintiff everything it received under the contract. As a further defense it alleges the failure of plaintiff to furnish statements of sales of the book, a "condition precedent" to Universal's obligation to pay the additional $25,000. which was to be calculated on the number of books sold. By counterclaim it seeks to recover the $10,000. it paid plaintiff on the signing of the contract.

Plaintiff has asserted an alternative claim against Dodd, Mead, the publisher of her book It Gives Me Great Pleasure. Dodd, Mead, on May 17, 1948, undertook by contract with plaintiff to copyright the property and "to take all the usual precautions to protect said copyright." Plaintiff's position is that if Universal's counterclaim is sustained, she is entitled to judgment against Dodd, Mead for the damage to her resulting from any of the alleged imperfections in the copyright on the property arising from the publication of the book. Plaintiff, however, "does not concede that any such imperfections exist."

Defendant Dodd, Mead's answer denies any breach of its contract with plaintiff, and asserts affirmatively failure on the part of plaintiff to furnish complete or necessary information and assignments on prior copyrights and publications. Dodd, Mead also alleges that any injury plaintiff has sustained arises solely from her own failure to duly perform her contract with Universal, and that in this Dodd, Mead did not participate.

From the pleadings, affidavits and documents submitted the following facts appear undisputed:

Plaintiff is well-known as a lecturer and author of several books and short stories. Many of her works have appeared in leading magazines and some have been made into successful motion pictures. Based on the theme of her experiences as a lecturer plaintiff wrote several short stories recounting numerous amusing anecdotes. The first, entitled "My Heart's In My Mouth", was published and copyrighted by the Atlantic Monthly in June, 1944; the second, a story entitled "Luggage For the South," was published and copyrighted in May, 1945 by the New Yorker magazine; the third story, entitled "Cincinnati and I," was not published until October, 1948. It was the picture rights to these three stories which were specifically sold to Universal by contract of April 22, 1948.

Following the making of the contract, plaintiff wrote nine additional stories. These plaintiff had contracted to sell Universal before they were written. Six of

them were published and copyrighted in the New Yorker, prior to November; four were written but were not published in any magazine. In November, 1948, the book It Gives Me Great Pleasure was published by Dodd, Mead.

Deriving its title from the first story it contained the book collected as chapters under their original titles but with revisions, the eight stories previously published and copyrighted by the Atlantic Monthly and the New Yorker magazines, and the four unpublished stories. The book was based entirely on the theme and idea of plaintiff's experiences as a lecturer, each chapter relating a separate incident. The book as published represented the "property", the rights to which plaintiff had agreed to and did sell to Universal.

The copyright notice affixed to the reverse of the front or fly leaf of the book reads: "Copyright, 1945, 1948 by Emily Kimbrough." There appears beneath this a further notation that several of the chapters (named) "originally appeared in somewhat different form as stories in the New Yorker." Neither "1944," the year of the Atlantic Monthly copyright of the chapter entitled "My Heart's In My Mouth," nor the fact that it had once appeared in that magazine as a story is mentioned. That the chapter in the book and the story of the same name originally published and copyrighted by the Atlantic Monthly recount the same incidents is not disputed; that plaintiff is the sole author is not questioned.

At the time the book was published the record owner of title to the copyright on the story "My Heart's In My Mouth" was the Atlantic Monthly. Since it retained no interest in the story after its first publication in that magazine, the Atlantic Monthly readily reassigned the copyright to plaintiff upon her request. This, however, did not take place until December 10, 1948—after publication of the book—and was not recorded until January 6, 1949.

Early in 1949, in anticipation of its obligation to pay plaintiff on April 22, 1949, the $25,000. due under the contract, Universal had the title to the copyright searched. Upon examination of the results of this search, Universal questioned the sufficiency of the notice of copyright in the book. Acting on the advice of counsel on April 8, 1949, Universal sent a letter advising plaintiff that it elected to and did rescind the contract on the ground that the copyright was "incorrect and insufficient." Universal, at the time, offered to return to plaintiff "everything of value" received under the contract "on condition that plaintiff repay the $10,000. paid upon execution of the contract."

On April 22, 1949, plaintiff's attorneys wrote in reply refusing "to accept or accede to this purported rescission." Later when Universal advised that it was standing firm on its notice of rescission, plaintiff filed this suit.

We will first consider the motion of the defendant Universal for summary judgment. Here, we have presented the question whether the copyright on the book It Gives Me Great Pleasure published by defendant Dodd, Mead in 1948 is sufficient to protect the copyright on that part of it which consists of the story "My Heart's In My Mouth."

The book contains as a chapter the story originally published and copyrighted in the July, 1944 issue of the Atlantic Monthly magazine. It is the contention of Universal that this republication was without sufficient copyright notice, and it is urged that this story is now in the public domain.

The notice of copyright it is claimed is faulty and insufficient because (1) the year "1945" is claimed as the year of the prior copyright and that this is in fact a later year than the actual year of the copyright on the chapter "My Heart's In My Mouth," the correct year being "1944"; and (2) the existing copyright for this chapter was not owned by plaintiff as claimed, for in fact the Atlantic Monthly was the record owner.

In sum, then, the position of Universal is that a substantial portion of the property, the subject matter of the contract, has lost copyright protection and has fallen into the public domain, and even if this be not so, that the faulty notice of copyright has created a "cloud on the title" to the property and has rendered it "unmarketable." This,

Universal urges affords justification in law for its non-performance of the terms of its written contract, for its failure to make the payments provided for in its undertaking, for the repudiation of its signed agreement and for its demand for the return of the $10,000. paid to plaintiff.

We conclude that the copyright on the property is valid and that no part of it has fallen into the public domain.

 It is settled that the common law right in the property is lost by publication whether or not there be copyright notice, Holmes v. Hurst, 1899, 174 U.S. 82, 19 S. Ct. 606, 43 L.Ed. 904; Egner v. E. C. Schirmer Music Co., 1 Cir., 1943, 139 F.2d 398, and that statutory copyright is created only by proper copyright notice printed in the original publication, 17 U.S.C.A. § 10, and in each republication. DeJonge & Co. v. Breuker & Kessler, 1914, 235 U.S. 33, 36, 35 S.Ct. 6, 59 L.Ed. 113; Mifflin v. Dutton, 1903, 190 U.S. 265, 23 S.Ct. 771, 47 L.Ed. 1043.

 If the story published and copyrighted in 1944 had been republished and copyrighted alone and without change in 1948 with no mention of the 1944 copyright, it would have fallen into the public domain. This would be so because "the substitution of the name of an assignee in a notice of copyright prior to the recordation of the assignment, results in an abandonment of the copyright", Group Publishers v. Winchell, D.C., 86 F.Supp. 573, 576, and the recital of a date later than the actual copyright date invalidates the copyright for the reason that it attempts to extend the copyright protection for longer than the statutory period. American Code Co. v. Bensinger, 2 Cir., 282 F. 829; Basevi v. Edward O'Toole, D.C., 26 F.Supp. 41, 48.

But we agree with plaintiff that here this was not the result, for it was not an instance of a republication of the same work at a later date. The revision of the original story "My Heart's In My Mouth" we find after comparison to be substantial and sufficient to constitute it a new work. Davies v. Columbia Pictures, D.C., 20 F.Supp. 809. In addition, it has been republished in chapter form as an integral part of a book which undisputably contains substantial new matter and which as a new work under Section 7 of the Copyright Law 17 U.S.C.A. § 7 is entitled to separate copyright. West Publishing Co. v. Edward Thompson, Co., 2 Cir., 176 F. 833. And this would be so even if it were found that the chapter and the story "My Heart's In My Mouth", as first published, were similar. National Comics v. Fawcett Publications, 2 Cir., 1951, 191 F.2d 594. The publication of a new work with its own copyright notice dispenses with the necessity of listing any prior copyright in order to protect it. This is provided for by the wording of the statute that such publication "shall not affect the force and validity of any subsisting copyright upon the matter employed or any part thereof." To the same effect is the statement of Ball, Law of Copyright and Literary Property, that

"A second impression of the book with the addition of new matter * * * constitutes a second edition, and this may be the subject of a new and distinct copyright. Such copyright will protect all the matter in the second edition in which copyright is already subsisting, as well as new matter therein, although it does not operate to extend the term or scope of the copyright previously secured for the first edition." (Sec. 76, pp. 172–74).

See also, National Comics v. Fawcett Publications, as to the sufficiency of the later copyright date.

That the plaintiff had the consent of the proprietor of the earlier copyright as required by the statute is evidenced by the letter of the Atlantic Monthly to plaintiff's agent dated June 15, 1944, as well as by the subsequent assignment of the copyright to her.

 Since the only copyright date necessary to protect the property is 1948, the insertion of "1945" in the copyright notice in the book was superfluous. There is no merit to Universal's contention that this unnecessary notation of the 1945 copyright imposed a duty on plaintiff of also reciting the 1944 copyright, for where there has been sufficient compliance with the statute an erroneous belief that more is re-

quited cannot invalidate what has properly been done. Although the listing of prior copyrights is a practice of publishers "there is nothing in any act of congress to show that each successive edition must specify the date of the original copyright". Lawrence v. Dana, C.C.Mass.1869, 15 Fed.Cas. pp. 26, 52, No. 8.136.

■■ Universal also urges that assuming the 1948 notice to be sufficient, the copyright of the book is defective because in plaintiff's application for her United States copyright she failed to state that the book was a new edition. But, irregularities in the copyright application standing alone do not affect the validity of the copyright, where, as here, there has been compliance with the statute. United States v. Backer, 2 Cir., 1943, 134 F.2d 533; Baron v. Leo Feist, Inc., D.C., 78 F.Supp. 686, 692, affirmed, 2 Cir., 1949, 173 F.2d 288. There is no claim by Universal that either it or anyone else was misled by this omission in the application; there is no evidence to indicate a purpose to deceive; the omission was innocuous.

■ Nor, do we find any substance to Universal's objection that the notice of copyright in the book was sufficiently defective to affect the "marketability of the title to said copyright," even though it be held that it did not render the copyright invalid. We assume for decision that the contract between plaintiff and Universal contained an implied warranty of marketability of title to the property even though we find none formally expressed. Universal's objection to the notice of copyright, it seems to us on analysis, if sustained would result not in defeating plaintiff's title to the copyright, but in the very destruction of the copyright property itself. If the objection were held to be of substance, the property would be lost by statutory abandonment; it would not survive that it might be claimed by another. The objection raises no issue as to ownership or title. While we take it as settled that a purchaser is not "bound to take a title which he can defend only by a resort to parol evidence, which time, death, or some other casualty may place beyond his reach", Moore v. Williams, 1889, 115 N.Y.

586, 591, 22 N.E. 233, 234, 5 L.R.A. 654, such a situation is not here presented by the undisputed facts. We regard Hollywood Plays v. Columbia Pictures Corp., 299 N.Y. 61, 85 N.E.2d 865, 10 A.L.R.2d 722, and like holdings as entirely inapposite.

The motion of Universal for summary judgment is denied, for we conclude that the United States copyright is valid.

■ We come then to consider the motion of defendant Dodd, Mead for summary judgment dismissing the complaint against it. The claim of plaintiff against Dodd, Mead is pleaded in the third count of the complaint; it is as we have noted an alternative claim and seeks recoupment of any damage plaintiff might sustain in the event of a holding that loss of the copyright in the United States resulted from the insufficiency of the notice of copyright in the book, or that there was a failure by plaintiff in the publication of the book to protect the copyright in the property in other countries. The claim is asserted under the contract of May 17, 1948 made between plaintiff and Dodd, Mead providing for the publication of the book. By this contract Dodd, Mead undertook "to copyright said work in the United States in the name of the Author and to take all the usual precautions to protect said copyright."

We have concluded that the copyright in the property in the United States is valid. We have made no determination of the validity of the copyright in foreign countries. We have not sufficient before us to enable us to do so. The agreement is not clear as to whether the requirement "to take all the usual precautions to protect said copyright" refers only to the United States copyright or to foreign copyright as well. Parol evidence is admissible as to the intention of the parties in the wording of this provision; it presents a factual issue. Then, too, just exactly what are the "usual precautions" must be the subject of oral proof and perhaps of trade custom and usage. Here again a factual issue must be resolved by trial. The motion of Dodd, Mead must be denied.

Finally, then, we come to consider plaintiff's motion for summary judgment against Universal.

In opposition, Universal points to its contract with plaintiff which provides for the sale to it of "all motion picture rights * * * for the entire world," and to paragraphs "5" and "6" of the contract by which plaintiff warranted that in addition to the United States "said property is or may be validly protected by copyright throughout the world so far as the laws of other countries provide for such protection * * *," and further agreed to preserve and protect the property from coming into the public domain by affixing to each publication the notice "necessary for copyright protection in the United States or necessary for like protection under the laws of other countries * * *." As to these provisions, Universal urges that there are substantial issues of fact with respect to plaintiff's performance.

The complaint alleges that "plaintiff has duly performed all the conditions on her part to be performed" (paragraph "6"); this allegation is denied by Universal and in addition it is affirmatively pleaded as part of the "First Defense" of the answer (paragraph 20(f)) that "plaintiff did not preserve said property from coming into the public domain so far as legally possible, and failed to cause to be affixed to each copy * * * published and offered for sale such notice as was necessary for copyright protection * * * under the laws of other countries, and failed duly to register said property wherever its protection so required."

As a third defense (paragraph 30) Universal also denies performance by plaintiff in that she failed to comply with the "condition precedent" of furnishing defendant with statements of the sales of her book and to allow inspection of the publisher's accounts with reference to such sales.

The moving papers of plaintiff are silent as to what steps, if any, were taken to secure copyright protection in foreign countries and to furnish Universal with the required statements on sales. As to these a genuine and substantial issue of fact exists and plaintiff's motion is denied.