JOHN R. McPHERSON, PLAINTIFF, *v.* DU BOIS SMITH, DEFENDANT.

*Power of sale to executors — what facts appearing of record show that a sale thereunder was not made in good faith and is invalid.*

The testator left a will by which he appointed four executors and trustees, and empowered them to sell his real estate, in their discretion, at public or private sale but directed that certain portions of his estate, including certain real estate hereinafter mentioned, should be held in trust for the benefit of the three daughters of the testator during their respective lives, with remainders over to their children, in case such children should arrive at the age of twenty-one years; and in case of their prior death to others named in the will.

Subsequently the trustees conveyed the real estate thus left in trust to one Dyson, who immediately reconveyed the same in parcels by three deeds, one parcel to one of the daughters, a widow, and the other two parcels, respectively, one to each of the other two daughters, the husband of each daughter being a co-grantee with her. The consideration named in the conveyance to Dyson was equal to the aggregate of the considerations named in the three deeds by which he conveyed the property. When the property was conveyed to the daughters and their husbands they had children, who were all minors.

*Held,* that while the provisions of the will permitted the trustees to sell the real estate either at public or private sale and thus convey a good title to the premises, that the record in this case was such as to notify a purchaser that the transaction between the trustees and the life tenants was not a sale made in good faith in pursuance of the terms of the will, and that a legal presumption would arise from such record that Dyson was not a purchaser, except for the mere purpose of acting as agent of the trustees and of the life tenants in an attempt to divert the property from the purposes designated by the testator.

That the title was not such as a party would be required to accept under a written contract for the sale and purchase of the real estate.

CONTROVERSY submitted to the court by an agreed statement of the facts, for the purpose of determining the rights of the parties under a written contract, whereby the plaintiff agreed to sell, and the defendant to purchase, certain real estate in the city of New York, known as Nos. 49 and 51 Stanton street.

*Marsh, Wilson & Wallis*, for the plaintiff.

*Fred W. Hinrichs*, for the defendant.

Macomber, J. :

The defendant refused to take the deed of the two lots sold to him by the plaintiff, on the ground that the title was not marketable. It appears from the submission papers that the plaintiff derived his title by several mesne conveyances as to one of said lots from Jeanet Clarke, a widow, one of the three daughters of James R. Smith. The plaintiff's title to the other lot was derived by several intermediate conveyances from Matthew St. Claire Clarke and Anna R. Clarke, his wife, the latter being another of the daughters of James R. Smith, and Matthew St. Claire Clarke, being a son-in-law and the executor and trustee under the will and codicil of James R. Smith. The testator left another daughter, Elizabeth C., who, after the testator's death, married one Joseph Duncan.

James R. Smith, the testator, died in 1817, leaving a will and codicil thereto, by which he appointed four executors and trustees, of whom said son-in-law, Matthew St. Claire Clarke, was one, and James Boorman was another. These trustees, or their survivor or survivors, were clothed by the will with power to sell the testator's real estate, in their discretion, at public or private sale; but they held certain portions of the estate, of which the two lots mentioned above formed a part, in trust, for the benefit of the said three daughters during life, with remainder over.

The twelfth paragraph of the will, among others things, provided as follows: "And if either of my daughters shall die without lawful issue, or leaving issue, which shall not attain the age of twenty-one years, and without issue, then the share or portion of my said daughter, after the death of her husband, or if there be no husband living at her death, shall go and be divided among my other children, share and share alike, and to their issue in case of the death of either of them, share and share alike, such issue to take the portion that would have belonged to his, her, or their father or mother."

At the time of the conveyances to the three daughters hereinafter mentioned, namely, December 26, 1829, they each had children living, but none of such children had attained the age of twenty-one years. On the last mentioned day the two surviving trustees under the

will, viz., the son-in-law, Matthew St. Claire Clarke, and James Boorman, conveyed the real estate of the testator in the city of New York, including these two lots in question, to Robert Dyson, in which deed the widow and the son, James C. R. Smith and wife, and Anna R. Clarke, the wife of the trustee of that name, and Elizabeth C. Duncan and her husband, Joseph Duncan, joined for the expressed consideration of $64,710.59.

On the same day three deeds were executed by Dyson, one to the widow, Jeanet Clarke, covering one of the lots in question, for the expressed consideration of $21,573.13; the second to said trustee, Matthew St. Claire Clarke, and his wife Anna, conveying another portion of the property, including the other lot in question, for the expressed consideration of $21,614.56; the third, to Joseph Duncan and his wife Elizabeth, for the expressed consideration of $21,522.90, thus conveying to the life tenants and their husbands all the real estate which had been conveyed to Dyson by the surviving trustees.

It appears, therefore, that Dyson was a mere conduit to pass the title out from under the trusts imposed by the will, so far as it relates to the execution of it in behalf of the heirs of the three daughters, and to place it in the hands of the life tenants. The aggregate sum of the three amounts recited in the conveyances as having been paid to Dyson is exactly equal to the amount recited as paid by Dyson in the deed conveying the property to him. The four deeds were placed on record at the same time, about a year after their date.

In this transaction the rights of the grandchildren seem not to have entered into the contemplation of the parties. Each of the children of the testator had children of his or her own, and there was at least a possibility, if not a probability, that these, too, under the will, would ultimately become interested in their grandfather's estate. If any of them attained their majority, their interest would become absolute. When the property was conveyed to the daughters and their husbands, their children were all minors. As it is pointed out in the brief submitted by the counsel for the defendant, it is not improbable that one of the daughters might have a child years after this partition of her father's estate. Such child might in time have issue just before attaining the age of twenty-one years. Under the testator's will such issue would be entitled to take as remaindermen. Less than fifty-nine years have elapsed

since this voluntary partition. It is not a violent supposition that one of the testator's daughters should have given birth to a child in 1839; that such daughter should have died in child-birth in 1859, leaving a child, and that such grandchild of the testator, having reached his majority in 1880, should have a cause of action as remainderman against the very lots in question.

The purchaser upon a judicial sale has the right to acquire a good and marketable title. A title open to a reasonable doubt is not a marketable one, and the court cannot make it one by passing upon an objection, depending on a disputed question of fact, or a doubtful question of law, in the absence of the party in whom the outstanding right is vested. (*Fleming* v. *Burnham*, 100 N. Y., 1; *Jordan* v. *Poillon*, 77 id., 518.)

Such would be the serious objection to the title of the lands in question, except for those provisions of the will which permitted the trustee to sell, either at public or private sale, and thus convey a good title to the premises. This power of sale would be a complete answer to the apparent claim made by the defendant, provided the record of the title in the plaintiff was of such a character as not necessarily to raise a legal doubt of its validity. It is true, as the Revised Statutes provide (3 R. S. [7th ed.], p 2183, § 66), " No person who shall actually and in good faith pay a sum of money to a trustee, which the trustee as such is authorized to receive, shall be responsible for the proper application of such money according to the trust; nor shall any right or title derived by him from such trustee in consideration of such payment be impeached or called in question in consequence of any misapplication by the trustee of the moneys paid." This statute was a departure from the common-law rule but it did not go into effect until a few days after the date of the conveyances mentioned, and whether or not the rights of the parties are to be determined by the rule under the statute or the rule at common law it may not be profitable to consider. But whether under the one or the other, the record presents a case, as it seems to me, where the purchaser is directly notified that the transaction between the trustees and the life tenants was not a sale made in good faith in pursuance of the terms of the will. From the record before us a legal presumption would arise that Dyson

was not a purchaser except for the mere purpose of acting as the agent of the trustees and of the life tenants to divert the property from the purposes designed by the testator. What the deceased intended to have done in case of a sale was, that the property should be actually sold and the moneys realized therefrom held under the obligations imposed upon the trustees by the terms of the will. This, to my mind, appears as conclusively as if oral evidence had been given to the effect that such was the fraudulent purpose of the parties to the original conveyances, and that the subsequent grantee had been informed of that fact by word of mouth. This conclusion receives strong corroboration in the fact that upon the face of the deed from the trustees to Dyson, one of them, Mr. Boorman, while assisting in the diversion of the property, received no part of the consideration. The conveyance contains this singular statement as to the consideration " paid to Matthew St Claire Clarke, one of the parties of the first part, the receipt whereof the said Matthew doth hereby sole acknowledge," etc.

It is probable that the testator's grandchildren and their descendants, who seem to be scattered throughout Pennsylvania, Illinois and the District of Columbia, may never have learned of the terms of their grandfather's will; and it is possible that such ignorance may continue for such a length of time that in some way or other the rights of their descendants may be barred. But of this we have no positive assurance; but, on the contrary, there is a possibility that the descendants of the testator may yet appear and claim the property as has been pointed out above. Under such circumstances, a reasonable doubt arises as to the title which the plaintiff may give, and hence the defendant ought not to be compelled by process of law to complete his purchase.

Judgment is accordingly ordered for the defendant, with costs.

VAN BRUNT, P. J., and BARTLETT, J., concurred.

Judgment ordered for defendant with costs.