William B. Reynolds, as Executor, etc., of Celancy Reynolds, Deceased, Respondent, *v.* Amanda J. Strong, Appellant.

*Tenancy by the entirety — election — acceptance of a benefit under a will — rights inconsistent therewith, renounced — recovery of the purchase price of real estate — defense of defect of title — its validity not determined in the absence of interested parties — what is a marketable title.*

Where a husband and wife are the grantees named in a deed they take the premises therein described as tenants by the entirety, and the survivor takes the entire estate.

The question as to whether the widow of a decedent has elected to accept the provisions of his last will and testament which were inconsistent with her ownership of certain real estate, the record title to which was in her name, ought not to be passed upon in an action brought to compel the specific performance of a contract to purchase such real estate, where the determination of such question in that action would not bind all the persons interested in such property.

The defense of want of marketable title is as available in an action at law, brought to recover the purchase price agreed to be paid by a person contracting to purchase real estate, as it would be in an equitable action brought to compel the specific performance of such contract.

When the validity of the title of real estate is doubtful, the court ought not to determine the question and compel an acceptance of the title by a person con-

tracting to purchase such real estate, in the absence of and without hearing all parties whose rights depend on the decision of the same. If there is a defect in the title which is curable, if the proper proceedings are taken for that purpose, the burden of causing the necessary steps to be taken cannot be cast upon the purchaser.

An agreement was made between the executor of an estate and an heir at law of the deceased, under their respective hands and seals, for the sale of certain real estate, supposed to have been owned by the deceased. By the terms of the contract the executor agreed to sell such real estate for a specified sum, which the heir at law agreed to pay in the manner therein specified, on receiving which at the time and in the manner specified the executor agreed, at his own proper cost and expense, to execute and deliver to such proposed purchaser or to her assigns, "a good and sufficient executor's deed of the said premises, accompanied by a certified search from the clerk of the county " in which said premises were situated.

*Held,* that the covenants in the contract were mutual and dependent;

That the vendor was obliged to give a good title;

That the language used required not only a deed good in its phraseology and form, but one that transferred a good and sufficient title, not one merely valid in point of fact, but one that was marketable and such an one as might be sold to a reasonable purchaser or mortgaged to a person of reasonable prudence as security for the loan of money.

APPEAL by the defendant, Amanda J. Strong, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Schuyler on the 15th day of February, 1894, upon the decision of the court rendered after a trial at the Schuyler Circuit.

*Jared T. Newman,* for the appellant.

*Charles H. Everts,* for the respondent.

HARDIN, P. J.:

Gideon Reynolds and Celancy Reynolds, his wife, November 5, 1867, received a conveyance from William Cory of the lands described in the complaint, consisting of about 125 acres, lying in the town of Hector, Schuyler county, for the consideration of $5,000, recited in the conveyance. They took as tenants by the entirety and the survivor took the whole estate. (*Bertles* v. *Nunan,* 92 N. Y. 152; *Bram* v. *Bram,* 20 Wkly. Dig. 519; 39 Alb. L. J. 87; *Wurz* v. *Wurz,* 27 Abb. N. C. 58, and notes; *O'Connor* v. *McMahon,* 54 Hun, 66; 26 N. Y. St. Repr. 596; *Coleman* v. *Bresnahan,* 54 Hun, 619; *Miner* v. *Brown,* 45 N. Y. St. Repr. 189; *Zorntlein* v.

*Bram*, 100 N. Y. 12; *Stelz* v. *Shreck*, 128 id. 263; 40 N. Y. St. Repr. 267; *Germania Sav. Bank* v. *Jung*, 18 N. Y. Supp. 709; *Jooss* v. *Fey*, 41 N. Y. St. Repr. 213.)

On the 7th day of November, 1867, Gideon Reynolds executed a mortgage to William Cory for $3,000, which was recorded on the 26th of March, 1875, which still remains open on the record, not having been satisfied by Cory in his lifetime or by his administrator. Subsequent to his death his administrator commenced an action in this court for the foreclosure of the mortgage. Subsequent to the death of Gideon Reynolds, which occurred on the 23d day of March, 1875, his widow and their three children, William B. Reynolds, Amanda J. Armstrong and Mrs. Thomas, interposed an answer to the foreclosure suit challenging the validity of the mortgage and the attempted lien upon the property, and the issues formed in that action were brought to trial at a Special Term of this court held on the 25th of June, 1878, which court "found and decided that said Gideon and Celancy Reynolds took and held said premises as tenants by the entirety; that on the death of said Gideon Reynolds said mortgage was void; that the plaintiff had no right of action upon said mortgage, and that the complaint in said action be dismissed, and directing judgment thus to be entered dismissing the plaintiff's complaint, without costs to or against either party, which findings and decisions were filed and entered in the office of the clerk of Schuyler county on the 19th day of April, 1892." It does not appear that any judgment was entered on that decision. On the 23d day of May, 1873, Gideon Reynolds made and published his last will and testament, which was duly admitted to probate, after his death, by the surrogate of Schuyler county, wherein, among other things, he bequeathed unto his wife, Celancy Reynolds, all his personal property of every kind and nature; and he also in the same will gave to his wife "entire possession, use and control of all my farm or real estate, consisting of 120 acres of land on lots No. 85 and 86 in the town of Hector, * * * where I now reside, to be used and enjoyed by her without impeachment for waste during her natural life for her comfortable support and maintenance." The will also contained further provisions, to wit: "It is my will and I hereby order and direct that my whole estate, personal and real, shall be applied and devoted

to and for the comfortable support and maintenance of my said wife, Celancy Reynolds.   *   *   *   And in case the personal property left at my decease, after paying debts and funeral charges, together with the rents, issues and profits of real estate, shall not be sufficient for her comfortable support and maintenance as above provided for and specified   *   *   *   then, and in that case, I hereby authorize and direct my executor hereinafter named to raise the additional amount necessary to meet such deficiency by executing a mortgage upon such real estate, or otherwise, and pay the amount when so raised to her for such support as hereinbefore provided." And the will also further provided as follows : " 3. After the death of my said wife, Celancy Reynolds, I hereby authorize my said executor to sell and convey all my real estate, and whatever may remain of my personal estate, and out of the funds arising from such sale or sales, pay the funeral expenses of my said wife and such debts and liabilities as herein authorized and contemplated, and the residue and remainder of my estate be disposed of as hereinafter directed.   4. I give and bequeath to my daughter Amanda Strong, wife of Larue P. Strong, and Lydia Thomas, wife of John E. Thomas, each the sum of $1,700. The above legacies to my daughters is intended to make them equal sharers with my son, William B. Reynolds, to whom I have already given a like amount, and the residue of my estate, if any, after paying the two legacies to my two daughters as above provided, I give and bequeath to my three children, my two daughters above named, and my son, William B. Reynolds, equally, share and share alike."

The will named William B. Reynolds as executor, and he received letters testamentary and settled up the estate and was discharged by the surrogate upon a final accounting.   The testator left no other real estate.   The personal property, after the payment of the debts and expenses, amounted to about $1,220, and the possession thereof was delivered to Celancy Reynolds, she executing back to the executor a promissory note, conditioned to be paid in the event it was necessary for the payment of his debts, she claiming the property under the will.   When the executor settled the estate, he had ascertained that it was not necessary that her note should be paid, and he brought it into the settlement and received credit therefor in his final accounting.   Inasmuch as her note had been simply given to protect the

executor in case he should be compelled to pay the Cory mortgage, or any other indebtedness of the testator, he was credited with the note upon the assumption that he had paid to her the amount thereof as legatee under the will. The final accounting did not take place, however, until after the death of Celancy Reynolds, which occurred on the 1st day of September, 1890. She remained in possession of the personal property thus acquired under the will of her husband, and she remained in possession of the real estate mentioned in the complaint and mentioned in his will as aforesaid, and continued therein until the time of her death. She left a last will and testament made and published on the 24th day of September, 1885, which was duly admitted to probate by the surrogate of Schuyler county, and letters testamentary were issued to the plaintiff, her son, who was named therein as the executor. In her will she bequeathed to her daughter Lydia Thomas and to her son William B. Reynolds each the one equal one-third part of all her real and personal estate absolutely, and the second paragraph of her will was as follows: " The remaining one-third part of my said estate I give, devise and bequeath to my daughter Amanda J. Strong, to be used by her for her use and benefit during her natural life, hereby giving her full power to sell and convey the same and use it as she may see fit, and in the event of her dying without a will, that portion which shall remain at her decease, or the proceeds of the same, I hereby give, devise and bequeath to her five children, viz., Leander Strong, Cory Strong, Lewis P. Strong, Ella Strong and Lee Strong, or to such ones of said children as shall be living at the decease of said Amanda." And the third provision of her will was as follows: " I hereby authorize and empower my executor hereinafter named to sell and convey any and all of my real estate and divide the proceeds as herein provided. Likewise I make, constitute and appoint William B. Reynolds, my son, to be executor of this, my last will and testament, hereby revoking all former wills by me made." The plaintiff, her executor, about the 2d of October, 1890, received letters testamentary from the surrogate and entered upon the discharge of his duties as such, and on the 14th day of March, 1892, he entered into an agreement with the defendant, his sister, under their hands and seals, for the sale of the farm described in the complaint, and

by the terms of the contract so entered into by the parties the plaintiff agreed to sell for the sum of $4,375 the land described in the complaint, consisting of about 125 acres of land, for the sum of $4,375, which she agreed to pay for as follows : " On the 1st day of April, 1892, $2,916.67 in money, $500 by receipt for that amount to apply on her distributive share or legacy under the will of Celancy Reynolds, deceased, and her note for $958.33, with interest from the 1st day of April, 1892, to be collaterally secured by an assignment on her interest in the estate of Celancy Reynolds, deceased." And he agreed as follows : " On receiving such payment, at the time and in the manner above mentioned, shall, at his own proper cost and expense, execute and deliver to the said party of the second part, or to her assigns, a good and sufficient executor's deed of said premises, accompanied by a certified search from the clerk of the county of Schuyler." Indorsed upon that contract is the $500 down payment by way of a receipt mentioned in the contract. It may be observed the covenants in the contract were mutual and dependent (*James* v. *Burchell*, 82 N. Y. 108), and that the vendor was obliged to give a good title (*Bostwick* v. *Beach*, 31 Hun, 343), and that the language used required not only a deed good in its phraseology and form, but one that transferred a good and sufficient title (*Story* v. *Conger*, 36 N. Y. 673), and a title that was not merely valid in point of fact, but one that was marketable, such an one as might be sold to a reasonable purchaser or mortgaged to a person of reasonable prudence as security for the loan of money. (*Moore* v. *Williams*, 115 N. Y. 586; *The Methodist Episcopal Church Home* v. *Thompson*, 108 id. 618; *Haffey* v. *Lynch*, 143 id. 247.) The defendant was in possession of the premises at the time the contract was entered into, having had the occupancy from the time of her mother's death, and claims to occupy as a devisee under her father's will, subject only to the power of sale given to his executor as a tenant in common with her sister, Lydia B. Thomas, and her brother, William B. Reynolds. Apparently the defendant in good faith entered into the contract for the purchase of the premises, and sought with some diligence to perform the requirements of the contract on her part; however, when she sought to raise money upon the premises, of a lender who had given her assurances that he would furnish her money, she was

finally refused a loan by the party to whom she had applied, he having made inquiries as to the condition of the title to the property, and having learned that the mortgage given to Cory remained unsatisfied of record, and that the sister of defendant and of the plaintiff, Mrs. Thomas, claimed an interest in the property to the extent of the $1,700 legacy named in the will of her father, and the lender refused to make the advance necessary to enable the defendant to complete the purchase, and thereupon the defendant was unable to carry out the terms of her contract for the purchase of the premises according to the tenor and spirit of the contract entered into by her with her brother, the plaintiff, executor of the will of Celancy Reynolds; thereupon this action was commenced to recover the purchase price mentioned in the agreement, and the plaintiff in his complaint alleges a tender of the deed and demand of performance of the contract. In answer thereto the defendant says that he has not tendered a good title, and that he was not possessed of a good title or power to convey such an one, inasmuch as it is asserted that Celancy Reynolds, by accepting the personal property mentioned in the bequest made to her by Gideon Reynolds, elected to adopt, confirm and approve his will, which undertook in terms to dispose of the real estate in question to his heirs at law; and the answer of the defendant also sets up that the title tendered by the plaintiff was not a marketable one, and, therefore, she was not obliged to fulfill the stipulations of the agreement on which the plaintiff rested his right of recovery. The trial court held, as matter of law, that the plaintiff was entitled to recover, and awarded judgment for the balance stated to be due upon the contract, to wit, $3,875 and interest.

(1) It is insisted in behalf of the appellant that Celancy Reynolds, by receiving the personal property bequeathed to her by the will of Gideon Reynolds, elected to carry out the provisions of her husband's will, and, hence, that at the time of her death she had not title to the real estate in question which would pass under her will, and that the power of sale mentioned in her will of the real estate was inoperative, and, therefore, that the plaintiff by tendering a deed did not offer to the defendant a good title to the property described therein. It appears by the evidence that before the deed was tendered by the plaintiff to the defendant the sister, Mrs. Thomas, had

instituted proceedings before the surrogate against the executor, the plaintiff, seeking to recover the $1,700 mentioned in her father's will, and that the plaintiff had notice of such claim, as did also the defendant. A hearing was had before the surrogate and he finally, on May 5, 1892, reached the conclusion to dismiss the proceedings "upon the ground that it is not proved to the satisfaction of the surrogate that there is money or other personal property of the estate of Gideon Reynolds, deceased, applicable to the payment or satisfaction of the petitioner's claim within subdivision 2 of section 2718, Code of Civil Procedure, and without prejudice to an action or an accounting in behalf of the petitioner." The decision seems to have been made on the 5th day of May, 1892, and about that period the plaintiff and the defendant were advised in behalf of Mrs. Thomas that her claim would be persisted in and that proceedings would be taken to enforce the same; and on the 12th of May, 1892, when the plaintiff tendered the deed, he had knowledge of the position taken by his sister, Mrs. Thomas, who insisted that, by reason of the election of her mother to accept the personal property mentioned in the will of the father, her claim was a valid one and could be enforced out of the real estate in question.

In *Havens* v. *Sacketts* (15 N. Y. 365) it was held: "In equity one who accepts a benefit under a deed or will must adopt the whole contents of the instrument, and renounce every right of his own inconsistent with its full effect and operation, though otherwise legal and well founded. He must elect to renounce the beneficial interest given by the instrument or to make good any disposition which the testator has affected to make of property which is not his own, but that of a beneficiary thus bound to make an election."

In *Leonard* v. *Crommelin* (1 Edw. Ch. 206) it was held that "a person shall not claim an interest under an instrument (either deed or will) without giving full effect to the same as far as he can, and renouncing any right which would defeat it. He who makes his election is bound to abide by it, unless he can restore the property to its original situation; and the taking possession binds the performance, although there be a loss."

In *Caulfield* v. *Sullivan* (85 N. Y. 159) it was said, viz.: "By accepting the provision made for her she assented to all the terms

HUN—VOL. LXXXII.       27

and conditions annexed to it, and yielded every right inconsistent with such terms and conditions. One who accepts of a devise or bequest does so on condition of conforming to the will. No one is allowed to disappoint a will under which he takes a benefit, and every one claiming under a will is bound to give full effect to the legal dispositions thereof so far as he can. (*Chamberlain* v. *Chamlain*, 43 N. Y. 424.) And where one is thus put to his election under a will, it matters not that what he takes turns out to be greater or less in value than that which he surrenders. (*Brown* v. *Knapp*, 79 N. Y. 136.)"

The same doctrine was stated in *Lee* v. *Tower* (124 N. Y. 375) in the following language : " No one can be allowed to disappoint a will under which a benefit is accepted, but, on the contrary, must concede full effect to the dispositions thereof."

Appellant calls attention to *Worthington* v. *Wiginton* (20 Beav. 67), and 6 American and English Encyclopædia of Law, 251, and other cases in harmony with those from which quotations have already been made. On the other ·hand, it is claimed by the respondent that an election was not proven by unequivocal acts; that the presumption is that she did not elect, and it is insisted that if her acts can be construed or a meaning given to them inconsistent with an election, then no election was made ; and in support of that contention reference is made to *Cox* v. *Rogers* (77 Penn. St. 160); Story's Equity Jurisprudence (§§ 1097, 1098); Pomeroy's Equity Jurisprudence (§§ 514, 515) ; *Spread* v. *Morgan* (11 House of Lords, 588); *Marriott* v. *Badger* (5 Md. 306) and *Whitridge* v. *Parkhurst* (20 id. 62). And it is also insisted by the respondent that Celancy Reynolds did not take possession of the personal estate or the real estate under the will of Gideon Reynolds, and that there were no certain and unequivocal acts indicating an election. It appears in the evidence that she remained in possession of the real estate from the time of the death of her husband in 1875 to 1890, the time of her death. It is to be borne in mind, however, that by the terms of the will of Gideon Reynolds she was given a life use of the property, and whether she was in possession as owner or in the enjoyment of her life estate in virtue of the will, if she had made an election, is not made absolutely clear by the evidence furnished upon the trial. It is insisted in behalf of the respondent that the

fact that she joined in the defense made to the Cory mortgage indicates that she had made no election. However, it is to be observed that nothing is discovered in the findings made on the trial of that action which indicates precisely the nature and character of the defense interposed, nor the evidence offered in support of the position taken in the answer of the defendants in that action.

It is to be observed that a solution of the question presented by the contention of the respective parties in regard to whether there was an election, if determined in this action, would not bind Mrs. Thomas; and in *Fleming* v. *Burnham* (100 N. Y. 8), where the question was raised as to whether a purchaser should be required to take a title as to which certain objections were made, it was said: " The purchaser is entitled to a marketable title, free from reasonable doubt;" and after stating that the parties to an action are bound by the determination therein made, the court observes: " But the court stands in quite a different attitude where it is called upon to compel a purchaser to take title under a judicial sale, who asserts that there are outstanding rights and interests not cut off or concluded by the judgment under which the sale was made. The objection may involve a mere question of fact or it may involve a pure question of law upon undisputed facts. In either case it may very well happen that the question is so doubtful that although the court would decide it upon the facts disclosed, in a proceeding where all the parties interested were before the court, nevertheless it would decline to pass upon it in a proceeding to compel a purchaser to take title and would relieve him from his purchase. The reason is obvious. The purchaser is entitled to a marketable title. A title open to a reasonable doubt is not a marketable title. The court cannot make it such by passing upon an objection depending on a disputed question of fact, or a doubtful question of law, in the absence of the party in whom the outstanding right was vested. He would not be bound by the adjudication and could raise the same question in a new proceeding. The cloud upon the purchaser's title would remain, although the court undertook to decide the fact or the law, whatever moral weight the decision might have. It would especially be unjust to compel a purchaser to take a title, the validity of which depended upon a question of fact, where the facts presented upon the application might be changed on a new

inquiry or are open to opposing inferences. There must doubtless be a real question and a real doubt. But this situation existing, the purchaser should be discharged. (*Shriver* v. *Shriver*, 86 N. Y. 575, and the cases cited ; *Hellreigel* v. *Manning*, 97 id. 56.)" And in *Abbott* v. *James* (111 N. Y. 673), the case from which the quotation has just been made was approved, and it was an action to compel specific performance on the part of the defendant, the purchaser, of a contract to purchase certain real estate, and in the course of the opinion delivered in that case, FINCH, J., observes : "Numerous authorities are cited on both sides and many considerations are advanced not necessary to be repeated. While upon the inquiry involved I have, perhaps, formed some decided opinion, I am obliged to admit that the question is doubtful and debatable, and justifies the differences of opinion which have risen among us. Those differences have not been wholly founded upon questions of law, but have rested somewhat upon the uncertain and undisclosed character of the facts ; for while they are settled in this case by the complaint and demurrer, the heirs may show them to be entirely different and will be at liberty to do so if they can. \* \* \* In such an emergency we must remember that if we force this title upon the purchaser, he may have to confront the heirs at law in a future litigation. They are not before us and will not be bound by our decision. They will have a right to be heard, both as to the facts and the law, and since the question is doubtful and quite evenly poised we think we ought not to expose the purchaser to the possible risks of the situation. We have, therefore, briefly stated the question sufficiently to disclose its general character, and without any argument upon it, which would be improper in view of our conclusion." With due deference to the cases from which the quotations have been made we are led to the conclusion that the question of election ought not to be passed upon in such a way as to compel the defendant to accept the title tendered by the deed of the plaintiff, and that if such a conclusion were to be asserted in this action it would not bind Mrs. Thomas, who is not a party to the suit. If the plaintiff had brought this action for specific performance of the contract in question, and had interpleaded Mrs. Thomas, so that all of the questions of fact as well as of law could have been authoritatively established and made binding upon Mrs. Thomas

as well as upon this defendant, the questions which the plaintiff has sought to have solved in his favor might have been considered and conclusively determined. Bearing in mind besides the question of election to which reference has been made, it appeared at the trial of this action that the Cory mortgage remained unsatisfied of record, and that no judgment in the action of foreclosure had been entered, we are. of the opinion that the plaintiff did not present a marketable title, which the defendant should be compelled to accept. The defendant would be exposed to litigation; she would have a piece of real estate which her father had at least clouded by his will, and which had on it an apparent lien created by the mortgage executed by her father to Cory.

In *Jordan* v. *Poillon* (77 N. Y. 521), in speaking of a purchaser, the court observed "he should not be left, upon receiving a deed, to the uncertainty of a doubtful title or the hazard of a contest with other parties, which may seriously affect the value of the property if he desires to sell the same. It is easy to, see how a claim of this kind might impair the value of the real estate sold by casting a cloud over the title, or by subjecting the purchaser to the risks of a contest at law. From such a result he is entitled to protection, and the case should be very plain which would authorize a court to decide a question arising on a motion to compel a party to take a conveyance;" and in *The Methodist Episcopal Church Home* v. *Thompson* (108 N. Y. 618), which was an action brought to recover back a payment made upon a contract of purchase, it was held: "A reasonable doubt as to the vendor's title, such as to affect the value of the property and to interfere with a sale thereof to a reasonable purchaser, is sufficient. This rule applies as well in such cases as where the vendor sues for specific performance." The same doctrine was reasserted in *Kilpatrick* v. *Barron* (125 N. Y. 751). In *Moore* v. *Williams* (115 N. Y. 586) it was held that "where there is a defect in the record title, or an apparent incumbrance upon the premises, and the vendee, in order to defend his title, would be obliged to resort to parol evidence, he may refuse to complete his purchase, at least, except in extraordinary cases, in which it is very clear the purchaser can suffer no harm from the defect or incumbrance." In that case there was an outstanding lien, and near the close of the opinion it is said: "The vendors should be at the expense of clearing

the title of this cloud, and it is not just that they should cast that burden upon the vendee and require him to take an unmarketable title." And in *Fisher* v. *Wilcox* (77 Hun, 208) it was held, viz.: "When the validity to the title of real estate is doubtful the court ought not to determine the question and compel an acceptance of the title in the absence of and without hearing all the parties whose rights depend on the decision of the same." (*McPherson* v. *Smith*, 49 Hun, 255.) And in *Crouter* v. *Crouter* (133 N. Y. 55) it was said, near the close of the opinion, "The defect is also curable if the proper proceedings are taken for that purpose. But the burden of causing the necessary steps to be taken to conclude the defendants in this action cannot be cast upon the purchaser at the sale. He has a right to expect and demand a marketable title, and one free from a reasonable doubt as to its validity." (*Vought* v. *Williams*, 120 N. Y. 253.)

In *Moore* v. *Williams* (*supra*) it was held: "Although the distinction between good and marketable titles is peculiar to courts of equity, since the union in this State of law and equity in the same courts, an action at law by the vendee to recover back purchase money paid may be based upon the equitable ground for rejecting a title, *i. e.*, that it is not marketable." That case seems to be an authority for holding that the defense of a want of marketable title is as available in a law action brought to recover the purchase price as it would have been in an equitable action for specific performance. (See opinion, 597.)

The foregoing views lead to the conclusion that the judgment should be reversed and a new trial ordered.

MARTIN and MERWIN, JJ., concurred.

Judgment reversed and a new trial ordered, with costs to abide the event.