JEANNE G. POSTLEY and Another, as Executors and Trustees under the Last Will and Testament of JOSEPHINE GUIDET BUCKLEY, Deceased, Plaintiffs, *v.* JULIUS KAFKA, Defendant.

First Department, August 6, 1925.

Vendor and purchaser — marketable title — deed executed in 1848 contained condition against manufacture and sale of intoxicating liquors — said deed provided for reverter in case of violation of condition — subsequently all parties interested entered into agreement abrogating condition contained in original deed — title is marketable.

The title to a lot in the borough of The Bronx, New York city, which was formerly a part of property owned by Gouverneur Morris, is not unmarketable on the ground that there were restrictions against the use of the property not contained in the contract of sale, in that the original deed from Gouverneur Morris contained a condition against the manufacture and sale of intoxicating liquors

and provided that if the condition were violated the property would revert to him, since it appears that shortly after the original deed was given, Gouverneur Morris and all the parties to whom he had sold lots or who then held title to lots sold by him, entered into an agreement releasing and abrogating the condition mentioned which was contained in the several deeds executed by Gouverneur Morris.

The effect of said agreement was to wipe out the condition so that thereafter neither Gouverneur Morris nor any successor in title who held before the condition was abrogated would have the right to re-enter and the purchasers of other lots whose deeds contained similar provisions would not have the right to enforce the provision as a restriction.

Furthermore, the lapse of time since the condition was imposed and the fact that it has not been observed for seventy-five years, and that that part of the city in which the property was located has been built up without regard to the condition, shows that all concerned have accepted as adequate the discharge thereof and acted accordingly during the period extending over a generation.

FINCH, J., dissents, with opinion.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 546 of the Civil Practice Act.

*James T. Crane,* for the plaintiffs.

*Benjamin B. Greller,* for the defendant.

MARTIN, J.:

This is a submission of a controversy upon an agreed statement of facts, the question being whether defendant was justified in rejecting title tendered under a contract by which plaintiffs agreed to sell and defendant to purchase a parcel of realty known as No. 3318 Third avenue, borough of The Bronx, New York city. The contract does not indicate that there are any restrictions on the use of the property other than those imposed by the Building Zone Resolution. As a result defendant's position is that provisions contained in certain deeds justified him in rejecting title.

In 1848 Gouverneur Morris was the owner of a tract of land in Morrisania in the town of West Farms, county of Westchester, State of New York, which he divided into lots and sold to various purchasers, inserting in each deed the following condition:

"But this indenture is upon the express conditions that no ardent or intoxicating drinks shall be manufactured, or bought or sold on the premises hereby conveyed to be used as a beverage, and further, that the grantee or party hereto of the second part, his heirs or assigns, shall within three years from the date hereof, erect or cause to be erected on the said premises a neat dwelling house of the value of at least. Three hundred dollars, and that no dwelling house shall be erected on the said premises of less value than Three hundred dollars. And in case the said conditions are not faithfully performed and kept the estate in the said premises

of the said grantee, or party of the second part, his heirs or assigns, or any of them shall cease and determine, and the said premises shall immediately revert to the grantor or party of the first part, and his heirs or assigns.''

The land affected by the contract is part of that deeded by Gouverneur Morris on September 8, 1848, to William Russell Collins of the city of New York.

The next conveyance thereof was made by deed dated October 7, 1848, from William Russell Collins to William Orpin of the city of New York. It repeated the condition, quoted above, which Gouverneur Morris had inserted in his deed to Collins.

On March 13, 1849, Gouverneur Morris and a number of other persons entered into an agreement or release canceling and discharging said condition in the deeds he had made and in those made by his grantees. In this agreement or release both William Russell Collins and William Orpin joined. It was duly recorded July 25, 1849. It is dated March 13, 1849.

The next conveyance affecting plaintiff's lot was that of November 27, 1851, by deed from William Orpin to Christian Gumpert of the county of Westchester. In this deed from William Orpin to Christian Gumpert the provisions referred to were not inserted, nor do they ever again appear in any subsequent deed affecting the premises.

The defendant asserts that the effect of such condition on the marketability of the property was decided by this court in *Weinberg v. Sanders* (204 App. Div. 409), and that the decision there made is conclusive in his favor.

In relation to plaintiffs' lot the possibility of a right to re-enter for breach of condition was forever extinguished by the instrument of 1849. The only persons who could have exercised such a right of re-entry were parties to the agreement and they solemnly and in most effective language agreed that the provisions in the deed should no longer have effect or be enforced and that the land should be freed and discharged therefrom. As to plaintiffs' lot the record now before this court shows that all persons who had held or were holding directly from Gouverneur Morris or by subsequent grant were parties to the agreement. Every one who might otherwise have a claim in reference to the possibility of reversion in that lot was forever prevented by this most complete agreement from becoming entitled to re-enter for breach of condition, for the condition was extinguished by consent. Only those indicated could have become entitled to such right to re-enter. Up to the time of the execution of the release no one had come into the title, so far as this particular parcel was concerned, but Gouverneur

First Department, August, 1925.                    [Vol. 213

Morris, Collins and Orpin. The heirs of none of them succeed to the possibility of a reversion following a breach of condition because the condition was extinguished by all persons who could have any relation to it, all such being still alive and joining in its extinguishment.

The decisive point of fact here is just the contrary of what was the basis in fact for the condition in *Weinberg* v. *Sanders* (*supra*). There one Davids had come into the chain of title and, though he had conveyed the property with a repetition of the condition and with an expressed provision for reversion to himself in case of breach, he did not join in the agreement discharging the condition. It was noted by the writer of the opinion in the case mentioned that " the defect complained of is a condition and not a restrictive covenant " and that the case deals " not with an equitable but with a legal right," the right of re-entry upon condition broken being referred to expressly.

As we understand the submission in this case the question is whether plaintiffs' title is subject to a condition, it apparently being contended for defendant that any one claiming under this title would be subject to a right of re-entry for past or future breach of the condition. He points to the case cited and doubtless fears that its effect, when coupled with an alleged breach of condition in the past, would be to make the title subject to a possible right of re-entry. But as stated the two cases differ at the turning point of fact and defendant's fear is ungrounded.

It is obvious that persons who may be or who may have been in the titles of other nearby or adjoining parcels conveyed by Gouverneur Morris, by grants containing in like manner the provisions quoted, have, because of ownership of other land, no possible standing to assert a right to re-enter, for condition broken, in relation to plaintiffs' lot. No one could have that standing but a person who himself made a grant of plaintiffs' land on a condition, or someone to whom has come the rights of such a grantor. In this instance, such a right never came and never can come to the heirs of Morris, Collins or Orpin because, while they were still alive, they extinguished any such possibility by executing the release for that very purpose.

It is suggested, but not by the record, that holders of adjoining land might have the right to enforce the provisions quoted as a covenant. This suggestion is neither supported by the record nor referred to in the briefs. It depends on assumptions of fact which the submission does not disclose to the court.

The release of 1849 refers to a section of what is now the borough of The Bronx. The lands to which it relates are extensive, especially

when considered as part of a great city. We may take judicial notice that they are in a locality where there is and for a generation has been much activity, including business uses of varied character. Though perhaps these lands embrace many lots which have been dormant and unused, every one having the slightest knowledge of conditions in New York city, in the locality of these lands formerly of Gouverneur Morris, must know it is inconceivable that there has been, in the vicinity referred to, such abstention from the manufacture, sale and use of " ardent spirits " and other intoxicating liquors as to leave the provisions referred to enforcible as restrictive covenants. Apart from the fact that this is not a point arising from what is stated by the parties or the briefs based thereon, and not technically before us, we should dismiss it as one wholly without merit. Our metropolis is rebuilding in nearly every section; and this development should not be retarded by fear bred of obsolete and utterly useless provisions of a restrictive character, resurrected from practical oblivion by the system and methods currently used by some title companies. Our courts will not be equally as perverse, or as blind to current conditions, or as unsympathetic with and as obstructive to the natural development of our city. Surely it is the law that vague uncertainties of an impractical and wholly useless character are not to be successfully invoked by those relying on provisions of a restrictive nature in deeds of realty.

It is settled that doubts are resolved against those seeking to enforce restrictions.

By the agreement or release of 1849 the parties thereto discharged the lands from the effect of the provisions quoted and, furthermore, covenanted against the enforcement of the same. Its execution was evidently under consideration very shortly after Gouverneur Morris made the subdivision and while it was still feasible to have it substantially complete; for it recites that the deeds made by him bear date September 8, 1848. It is executed by a great number of people and further recites that the parties of the second part are " the respective owners of the said lots and parcels of land by virtue of the said conveyances from said Gouverneur Morris and divers mesne conveyances."

Considering that the release very quickly followed the grant, that seventy-five years have· elapsed since it was executed, that the general character of this section of the city and especially of Third avenue in the vicinity of plaintiffs' lot negative the suggestion that the provisions quoted have been regarded as retaining vitality despite the release, it seems to me that this is not a case for the application of the principles invoked by the court in *Post* v. *Weil*

(115 N. Y. 361); *Silberman* v. *Uhrlaub* (116 App. Div. 869) and *Korn* v. *Campbell* (192 N. Y. 490). It would be contrary to common sense to invoke those principles in a wholly useless attempt to revivify provisions, possibly to be regarded as having the effect of restrictive covenants, where the character of the neighborhood shows that all concerned have accepted as adequate the discharge thereof and have acted accordingly during a period extending over a generation.

An additional reason for refusing to sustain the objection to title based upon the effect, as restrictive covenants, of the provisions referred to above is to be found in the fact that they no longer imply any burden on the land. The time for building dwellings for less than $300 in this section of the city has unquestionably passed; and the prohibition against the manufacture and sale of intoxicating liquors is now merely expressive of the fundamental law of the entire country. It is possible that in this respect the fundamental law might be changed, that a covenant against the sale of intoxicating liquor might at some future time become a real burden and, for such reason, that it should be regarded as a present burden. But the actual prospect is nevertheless a feature to be considered; and its consideration leads to a realization of the futility of the suggestion that, despite what has been pointed out, an owner of a lot not affected directly by the release of 1849 can find, in the provisions referred to, covenants the performance of which he may enforce.

On the stipulation contained in the submission there should be judgment for plaintiffs.

CLARKE, P. J., DOWLING and MCAVOY, JJ., concur; FINCH, J., dissents.

FINCH, J. (dissenting):

This is a submitted controversy, involving the question whether title to certain premises owned by plaintiffs and tendered to the defendant pursuant to a contract of sale, is a good and marketable title.

The property in question was derived by plaintiffs by mesne conveyances from one Gouverneur Morris, who in 1848 was the owner of a tract of land in Morrisania, in the town of West Farms, county of Westchester, State of New York, which he cut up into lots and sold to various purchasers, inserting in each deed, among other conditions not material to this decision, the following:

" But this indenture is upon the express conditions that no ardent or intoxicating drinks shall be manufactured, or bought or sold on the premises hereby conveyed to be used as a beverage,

\* \* \*. And in case the said conditions are not faithfully performed and kept the estate in the said premises of the said grantee, or party of the second part, his heirs or assigns, or any of them shall cease and determine, and the said premises shall immediately revert to the grantor or party of the first part, and his heirs or assigns."

The property in question was first deeded by Gouverneur Morris to one William Russell Collins and by Collins to one William Orpin by deed dated October 7, 1848. In 1849 Gouverneur Morris and many of his grantees entered into an agreement releasing, canceling and discharging the restrictive condition quoted above. To this agreement both Collins and Orpin were parties, at which time Orpin owned the property in question. Orpin thereafter and on November 27, 1851, conveyed the property by a deed which did not contain the aforesaid condition, and said condition has not appeared in any subsequent deed affecting the premises.

The plaintiffs contend that Morris, Collins and Orpin were the only ones who had a right in the conditional clause. They overlook the principle that words stated in terms of a condition may create also a covenant giving rights therein to the various other grantees to whom Gouverneur Morris sold lots, when he divided up the tract of land according to a definite plan. The same words may create a condition subsequent with a right of re-entry and may also give rights to adjoining grantees, provided the intention to give such rights is manifested. In *Ingersoll Engineering & Construction Co.* v. *Crocker* (228 Fed. 844) the owner of a tract of land subdivided it into blocks and lots, a large number of which he sold and conveyed by deeds containing a condition subsequent as follows: " It is made an express condition of this conveyance that said premises shall never be occupied or used by or in any trade or business such as if launched or started in localities in cities already thickly populated and devoted to first class residences are held to be nuisances; and upon violation of this condition, the said premises, and the title thereof, with all improvements thereon, shall revert to party of the first part, their heirs, representatives and assigns." The Circuit Court of Appeals for the Sixth Circuit held that these words created a condition subsequent with a right of re-entry in the grantor and also gave to the grantees of the lots created by the subdivision the right to enforce the condition as to any other lot in their vicinity and that this was so whether the original grantor had disposed of all his interest or not. As to this provision the court, by DENISON, C. J., said: " No one doubts the *prima facie* validity of this stipulation, or that it would at once be effective as a condition subsequent, a breach of which

would give the right of re-entry; and obviously such a condition would affect the title in the hands of all subsequent grantees, without regard to whether the condition was repeated in the deeds in the intervening chain of title. * * * By these deeds, the adjacent and nearby lot owners acquired rights to benefits from the condition imposed upon block 1."

In *Post* v. *Weil* (115 N. Y. 361) the language of the agreement was " upon the special condition that no part of the land or buildings thereon should ever be used or occupied as a tavern." In construing these words, Judge GRAY, speaking for the court, said: " Although the words of the clause in question are apt to describe a condition subsequent reserved by a grantor, we are in nowise obliged to take them literally. In the consideration of what, by the use of these words, was imported into the conveyance, we are at liberty to affix that meaning to them, which the general view of the instrument and of the situation of the parties makes manifest. Whether they created a condition, or a covenant, must depend upon what was the intention of the parties; for covenants and conditions may be created by the same words. In order that a covenant shall be read from the words of an instrument they need not be precise, nor technical, nor in any particular form. In Bacon's Abridgement (Covenant A) it is said: ' The law does not seem to have appropriated any set form of words which are absolutely necessary to be made use of in creating a covenant.' In Sheppard's Touchstone (161, 162) it is said: ' There need not be any formal words as " covenant," " promise " and the like to make a covenant on which to ground an action of covenant; for a covenant may be had by any other words.' Chancellor Kent, in his Commentaries (vol. 4, 132), in speaking of whether a clause in a deed shall be taken to create a covenant or a condition, says: ' Whether the words amount to a condition or a limitation, or a covenant, may be matter of construction depending on the contract. *The intention of the party to the instrument, when clearly ascertained, is of controlling efficacy;* though conditions and limitations are not readily to be raised by mere inference and argument.' " (Italics not in original.)

As clearly indicating the intention of the parties in the original subdivision of the tract, we find from the release in the record that the conditions inserted in the deed were put in at the special instance and request of the various grantees in said deeds, and each of the parties released and discharged all of the others from the rights which each had to enforce the condition as against the other lots granted in the general scheme of improvement. The language of the release in that respect reads as follows: " And the said land

was afterwards laid out into lots or parcels, streets, avenues, etc., and· the said Gouverneur Morris did convey the said respective lots or parcels of land by Deeds bearing date the eighth day of September, one thousand eight hundred and forty eight, and, Whereas, at the special instance and request of the grantees in said Deeds named there were inserted among other things, in the said deeds the following clauses and conditions, viz: 1. ' That no ardent or intoxicating drinks shall be manufactured or bought or sold upon the premises hereby conveyed to be used as a beverage.' 2nd. ' And that no dwelling house shall be erected on the said premises of less value than Three hundred dollars ' in default of which,   *   *   *   Deeds the estate in the said premises of the grantee or party of the second part in said deeds named, his heirs or assigns, should cease and determine and the said premises should revert to the said Gouverneur Morris, his heirs and assigns, forever, as by reference to said deeds may more fully appear.   And Whereas the said parties hereto of the second part the respective owners of the said lots and parcels of land by virtue of the said conveyances from said Gouverneur Morris and divers mesne conveyances, have requested the said Gouverneur Morris to release the said lots and parcels of land from the said above recited clauses and conditions; Now Therefore This Indenture Witnesseth: That the said *Gouverneur* Morris for and in consideration of the premises and the request of the said parties of the second part and of One Dollar, to him in hand paid by them the receipt whereof is hereby acknowledged doth hereby for himself, his heirs, executors and administrators waive, and renounce all claim, right, benefit, and advantage of what nature or kind soever arising from or which might arise from the conditions above recited in said Deeds and in each and all of them, and do˙release and forever discharge said lands and each and every lot or parcel thereof from all such claim, right, benefit, or advantage which the said Morris his heirs, executors, or administrators now have or might have in said recited conditions and doth release and discharge the said parties of the second part and each of them and their heirs and assigns and the heirs and assigns of each of them from all right of reversion claim benefit advantage of every name and kind soever in said lands or any parcel thereof which he the said Gouverneur Morris has or might have of from or by reason of the above recited conditions.   And the said several persons subscribing this instrument and constituting said parties of the second part do hereby and in consideration of the premises and of One Dollar to them in hand paid the receipt whereof is hereby acknowledged each for himself and herself, his and her heirs and assigns waive and renounce all right, claim

and demand under or arising upon or growing out of said recited conditions in said deeds, and in each and all of them. *And. they do hereby each for himself and herself, his and her heirs and assigns release and forever discharge each and all the others and the heirs and assigns of each and all the others from all claim, benefit, advantage, of every name and kind, which they or either of them or their heirs or assigns or the heirs or assigns of either of them have or might have of from or by reason of said above recited conditions in said deed or in any of them.* [Italics not in original.] And they do each for himself or herself, his or her heirs and assigns confirm to each and every of the others and the heirs and assigns of each and every of the others the particular lot or parcel of said land the title to which is in him or her vested and declare the same to belong to him or her his or her heirs and assigns discharged and exonerated from said above recited conditions contained in the deed thereof and they do mutually and each for himself or herself his or her heirs and assigns covenant with each and every of the others and the heirs and assigns of each and every of them that neither he or she or his or her heirs or assigns shall or will make, set up or have any claim or demand upon any one of the persons so constituting said parties of the second part or upon the heirs or assigns of anyone of them under or arising upon or growing out of said above recited conditions and that from all & any such claim and demand they and each of them, their heirs and assigns and the heirs and assigns of each of them shall be forever and at all times estopped and barred."

The fact also of there being one tract which was subdivided in accordance with a general scheme with uniform conditions as to the use thereof for the common benefit of the grantees, which in this case consisted primarily of protecting the residence tract against places where intoxicating liquor was sold, and providing that no house should be built which would cost less than the sum named, brings the case within the principle stated in *Silberman* v. *Uhrlaub* (116 App. Div. 869, 873), where this court, by MILLER, J., said: " In the case at bar if the owners of the tract in 1885 in contemplation of its division into small parcels deemed it wise to restrict their use to residence purposes, and for that purpose adopted a general scheme of improvement and united in mutual covenants upon partitioning the property, subsequent purchasers with knowledge of the scheme had a right to rely upon the observance of the restriction by every other purchaser, irrespective of whether such restriction was referred to in the deed to him and of whether such other purchaser happened to derive title from the same grantor, because, conceding such to have been the uniform scheme adopted,

it would be absurd to hold that a grantee could not restrain a violation on the part of his immediate neighbor who derived title from the same grantor, although he could ‾enjoin precisely the same act on the part of the owner of a parcel more remotely located obtained from a different grantor."

In *Korn* v. *Campbell* (192 N. Y. 490) WERNER, J., writing for the court, said: " There has been much judicial writing upon the subject of restrictive covenants  *  *  *. For the particular purposes of this case such covenants may be broadly divided into three classes.  In the first class may be placed those which are entered into with the design to carry out a general scheme for the improvement or development of real property.  This class embraces all the various plans, generally denominated in the English cases as building schemes, under which an owner of a large plot or tract of land divides it into building lots to be sold to different purchasers for separate occupancy, by deeds which contain uniform covenants restricting the use which the several grantees may make of their premises.  In such cases the covenant is enforceable by any grantee as against any other upon the theory that there is a mutuality of covenant and consideration which binds each, and gives to each the appropriate remedy.  Such covenants are entered into by the grantees for their mutual protection and benefit, and the consideration therefor lies in the fact that the diminution in the value of a lot burdened with restrictions is partly or wholly offset by the enhancement in its value due to similar restrictions upon all the other lots in the same tract."

In the submission there is no finding of fact that all of the grantees have joined in said agreement of release.  Any who have not so joined would not be precluded from the right to enforce the condition as a covenant, if the occasion should arise.  Under these circumstances, the title is not such a title as the defendant can be forced to accept.  As was said in *McPherson* v. *Smith* (49 Hun, 254), by MACOMBER, J.: " A title open to a reasonable doubt is not a marketable one, and the court cannot make it one by passing upon an objection, depending on a disputed question of fact, or a doubtful question of law, in the absence of the party in whom the outstanding right is vested."

In *Weinberg* v. *Sanders* (204 App. Div. 409) the emphasis of the objection was placed upon the aspect of the restriction considered as a condition, for the reason that in that case there had been no release of the condition, considered as a condition.

It follows that there should be judgment for the defendant, but without costs as provided in the submission.

Judgment ordered for plaintiffs.  Settle order on notice.